IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ESTECH SYSTEMS IP, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 2:21-cv-482-JRG-RSP (Lead) |
| CARVANA LLC, | § § | |
| *Defendant.* | § § § | |

**REPORT AND RECOMMENDATION**

Before the Court, defendant McKesson Corporation moves for judgment on the pleadings pursuant to Rule 12(c) of Federal Rules of Civil Procedure. Case No. 2:22-cv-004, **Dkt. No. 12**.[1] For the following reasons, the motion should be **DENIED**.

**I.   Background**

Plaintiff Estech Systems IP, LLC brought suit against several companies, including McKesson, alleging infringement of U.S. Patent Nos. 7,068,684 ("'684 Patent"); 7,123,699 ("'699 Patent"); 8,391,298 ("'298 Patent"); and 6,067,349 ("'349 Patent"). McKesson moves for judgment on the pleadings to challenge the subject matter eligibility of the patents in suit. Dkt. No. 12.

**II.   Standard of Review**

A Rule 12(c) motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to

---

[1] The motion and briefs in support and opposition were all filed prior to the Court's consolidation order. Accordingly, citation to record documents refer to those filed in Case No. 2:22-cv-004, unless otherwise specified.

1

the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir.1990) (per curiam). The standard for evaluating a Rule 12(c) motion is the same as the standard for evaluating a Rule 12(b)(6) motion for failure to state a claim. *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir.2008). In order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

### III.   Law

Pursuant to 35 U.S.C. § 101, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." "A claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166–67 (Fed. Cir. 2018) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)) (cleaned up).

At step one, the court asks "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). During this inquiry, the focus is on the claim language considered in the light of the specification. *Id.* (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). The analysis must not indulge in "overgeneraliz[ations]"

resulting in "abstractions" "untethered" from the claim language. *Enfish*, 822 F.3d at 1337. Instead, the analysis "depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance. The accuracy of those characterizations is crucial" to the analysis. *TechSec*, 978 F.3d at 1294.

In cases involving improvements to computing technology and networks, the Federal Circuit has relied upon two inquires: (1) "whether the focus of the claimed advance is on a solution to a problem specifically arising in the realm of computer networks," and (2) "whether the claim is properly characterized as identifying a specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function," *Id.* at 1293 (compiling cases).

Because McKesson has not persuaded the Court that the claims of the patents in suit are directed to ineligible subject matter, our recitation of the law ends here.

### IV.    '684 Patent

Claim 29[2] of the '684 Patent reads:

> In an information handling system comprising a hub, a multimedia server ("multimedia server") coupled to the hub, a telephone coupled to the hub, a workstation coupled to the hub through the telephone, and a data server coupled to the hub, a method comprising the steps of:
>
> > transferring data from the workstation to the telephone, wherein the data sent from the workstation is addressed for transmission to the data server;
> >
> > communicating audio information between the telephone and the multimedia server; and
> >
> > sufficiently throttling the data sent from the workstation to the telephone to increase a rate of transfer of the audio information during the communicating step, wherein the throttling step further comprises the step

---

[2] McKesson offers claim 29 as representative of the '684 Patent without showing it is representative. See *PPS Data, LLC v. Jack Henry & Assocs.*, Inc., 404 F. Supp. 3d 1021 at 1030-34 (E.D. Tex. 2019).

>of monitoring an amount of the audio information being received by the telephone from the multimedia server.

'684 Patent at 19:4-19.

McKesson argues that claim 29 of the '684 Patent is directed to the abstract idea of monitoring and prioritizing via data throttling which it further argues is an algorithmic determination of whether and the degree to which select data transmissions are transmitted over other data transmissions without imposing a change to the character of the data. Dkt. No. 12 pp 16-17 (citing *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016)).

Estech argues that the specification provides that the focus of the claimed advance is on prioritizing the transmission of audio or multimedia information over other "bursty data transmissions" within the confines of a specifically structured data system. Dkt. No. 17 p 14-15 (citing '684 Patent at 2:1-3). Estech further argues that the claims identify a specific improvement: throttling data transmissions between the workstation and the telephone in response to congestion between the telephone and the multimedia server. *Id.* at p 16; '684 Patent at 13:44-15:7.

Prioritization of data transmissions is a problem specific to data networks. As the specifications discuss, a "detection mechanism" "alerts the multimedia server that the network is in trouble with respect to too much congestion to permit real-time multimedia communication to occur." *Id.* at 14:57-61. Once a threshold level of congestion is met, "throttling" is initiated only between the telephone and the workstation only thereby increasing bandwidth space between the telephone and the multimedia server. *Id.* at 14:5-12, 14:53-57, 19:4-19 ("communicating audio information *between the telephone and the multimedia server*; and sufficiently throttling the data sent *from the workstation to the telephone* to increase a rate of transfer of the audio information during the communicating step, wherein the throttling step further comprises the step of monitoring an amount of the *audio information being received by the telephone from the*

*multimedia server*"). This is more than the recitation of prioritization as a result or generic function. The specific improvement described in the claim is inhibiting the flow of data within one communication domain so that data in another may flow uninhibited. *TecSec*, 978 F.3d at 1293 (compiling cases).

Accordingly, the Court finds that claim 29 of the '684 Patent is not directed to ineligible subject matter.

### V.    '699 Patent

Claim 1[3] of the '699 Patent reads:

In a telecommunications system, a method comprising the steps of:

> storing a voice mail message in a voice mail box in a voice mail system within a first LAN;
>
> coupling a second LAN to the first LAN over a WAN, wherein the first LAN, the second LAN, and the WAN operate under a routable network protocol;
>
> providing a sensory indication on a telecommunications device within the second LAN that the voice message is stored in the voice mail box within the first LAN; and the telecommunications device accessing the voice mail system within the first LAN to listen to the voice message stored in the voice mail box,
>
> wherein the step of the telecommunications device accessing the voice mail system within the first LAN to listen to the voice message stored in the voice mail box further comprises the steps of:
>
> establishing a channel between the first and second LANs over the WAN;
>
> coupling an audio path over the channel between the telecommunications device and the voice mail box; and
>
> streaming voice data containing the voice message from the voice mail box to the telecommunications device over the audio path, wherein the establishing step further comprises the steps of:

---

[3] McKesson offers claim 1 as representative of the '699 Patent without showing it is representative. See *PPS Data*, 404 F. Supp. 3d at 1030-34.

> in response to an input at the telecommunications device, sending a user mail box connection message from the second LAN to the first LAN requesting a channel, wherein the user mail box connection message includes an extension associated with the telecommunications device and an identification of the voice mail box;
>
> assigning the channel by the first LAN; and
>
> sending a connection established message from the first LAN to the second LAN.

'699 Patent at 12:53-13:21.

McKesson argues that claim 1 of the '699 Patent is directed to the abstract idea of remotely storing, transferring, and accessing information without generating or manipulating data, Dkt. No. 12 pp 19-20 (citing *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017), for the general purpose of automation, *Id*. at 20-21 (citing *Uni. of Fla. Rsch. Found., Inc. v. GE Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019)).

Estech argues that the focus of the '699 Patent is to create voicemail functionality that is transparent and accessible regardless of user location. Dkt. No. 17 pp 18-19 (citing '699 Patent at 1:58-60). Estech further argues that a dedicated pathway together with the other limitations is a "specific manner in which pathways for accessing and retrieving voicemail are established." *Id*. p 21. The Court finds that multimedia or audio data transmission over other data is a problem specifically arising in the realm of data networks. The specific improvement claimed is a dedicated multimedia or audio pathway so that such transmissions are not in competition with others. *TecSec*, 978 F.3d at 1293 (compiling cases).

*Intellectual Ventures I* does not alter this conclusion because there the Federal Circuit found that the subject claim "does not recite any particularly unique delivery of information" to remotely recall voice data. 850 F.3d at 1330. The same cannot be said of claim 1 of the '699 Patent. As the analysis above shows, a dedicated audio pathway is a particularly "specific" manner to

transmit data. *TecSec*, 978 F.3d at 1293 (compiling cases). McKesson's reliance on *Uni. of Fla.* is not persuasive because the subject patent was found to be directd to automation without any specific improvement to computer operations. 916 F.3d at 1367-68. That is not the case with claim 1 of the '699 Patent.

Accordingly, claim 1 of the '699 Patent is not directed to ineligible subject matter.

### VI.     '298 Patent

Claim 1[4] of the '298 Patent reads:

An information handling system comprising:

> a first local area network ("LAN");
>
> a second LAN;
>
> a wide area network ("WAN") coupling the first LAN to the second LAN;
>
> a third LAN coupled to the first and second LANs via the WAN;
>
> a first telecommunications device coupled to the first LAN;
>
> a plurality of telecommunications extensions coupled to the second LAN;
>
> the first LAN including first circuitry for enabling a user of the first telecommunications device to observe a list of the plurality of telecommunications extensions;
>
> the first LAN including second circuitry for automatically calling one of the plurality of telecommunications extensions in response to the user selecting one of the plurality of telecommunications extensions from the observed list, wherein the list of the plurality of telecommunications extensions is stored in a server in the second LAN, and is accessed by the first circuitry across the WAN; and
>
> a plurality of telecommunications extensions coupled to the third LAN, the first LAN including circuitry for enabling the user to select between observing the list of the plurality of telecommunications extensions

---

[4] McKesson offers claim 1 as representative of the '298 Patent without showing it is representative. See *PPS Data*, 404 F. Supp. 3d at 1030-34.

> coupled to the second LAN or observing a list of the plurality of telecommunications extensions coupled to the third LAN.

'298 Patent at 15:58-16:19.

McKesson argues that the '298 Patent is directed to either an automated rolodex or a generic computer function for storing, accessing, and displaying data, and that the abstract supplies the purpose of computer automation to replace a human operator or a printed directory. Dkt No. 12. pp 8-11 (citing *Uni. of Fla.*, 916 F.3d at 1367)).

Estech opposes arguing claim 1 of the '298 Patent is directed to more than just a rolodex or a generic computer function for storing, accessing, and displaying data. Estech persuasively demonstrates that the purpose of the '298 is to improve transparency and access to extensions by centralizing the storage of extensions. Dkt. No. 17 p 9-12. Data transparency and access across a distributed network is a problem specific to data networks. Compiling, storing, and making accessible data across a network by centralization is a specific improvement to meet the problem identified. *TecSec*, 978 F.3d at 1293 (compiling cases).

McKesson's reliance on *Uni. of Fla.* is not persuasive because the subject patent was found to be directed to automation without any specific improvement to computer operations. 916 F.3d at 1367-68. That is not the case with claim 1 of the '298 Patent.

Accordingly, claim 1 of the '298 Patent is not directed to ineligible subject matter.

## VII.  '349 Patent

Claims 1 and 12[5] of the '349 Patent read respectively:

[Claim1] A method comprising the steps of:

> receiving an incoming call from a calling party over a switched telephone network, wherein the incoming call includes caller ID information, wherein the caller ID information includes a telephone number of the calling party;

---

[5] McKesson offers claims 1 and 12 as representative of the '349 Patent without showing they are representative. See *PPS Data*, 404 F. Supp. 3d at 1030-34.

>connecting the incoming call to a voice mailbox;
>
>storing the caller ID information in association with the voice mailbox, wherein the voice mailbox is associated with a called party, and wherein the caller ID information is stored in association with a voice message left by the calling party for the called party in the voice mailbox; and
>
>automatically dialing the telephone number at a request of the called party while the called party is listening to the voice message.
>
>[Claim 12] A telephone call/voice processing system comprising:
>
>circuitry for coupling the system to a switched telephone network;
>
>circuitry for receiving an incoming call from a calling party over the switched telephone network, wherein the incoming call includes caller ID information pertaining to the calling party, wherein the caller ID information includes a telephone number of the calling party;
>
>circuitry for connecting the incoming call to a voice mailbox;
>
>circuitry for storing the caller ID information in association with the voice mailbox, wherein the voice mailbox is associated with a telephone extension of a called party, and wherein the caller ID information is stored in association with a voice message left by the calling party for the called party in the voice mailbox associated with the telephone extension; and
>
>circuitry for automatically dialing the telephone number at a request of the called party while the called party is listening to the voice message

'349 Patent at 11:29-44, 12:39-59.

McKesson argues that these claims are merely directed to collecting, transferring, and storing information. Dkt. No. 12 p 24-25. Estech argues that the '349 Patent is directed to associating caller ID information with the voice mailbox and the voice message so that a recipient may access caller ID information while either in the voice mailbox or when listening to the voicemail. Dkt. No. 17 pp 22-24. Access to caller ID information is a problem specifically arising in the context of telecommunications. The claim attaches caller ID information to not only the voicemail box, which it claims was well known, but also to the actual voicemail so that a user may

readily access and use accompanying caller ID information when listening to a specific voicemail. '349 Patent at 1:29-56. This is also a specific improvement to address the problem asserted. *TecSec*, 978 F.3d at 1293.

Accordingly, claim 1 of the '349 Patent is not directed to ineligible subject matter.

## VIII.   Conclusion

For the reasons discussed above, it is **RECOMMENDED** that McKesson's motion for judgment on the pleadings challenging the § 101 eligibility of U.S. Patent Nos. 7,068,684; 7,123,699; 8,391,298; and 6,067,349 be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 7th day of November, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE