IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ESTECH SYSTEMS IP, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00482-JRG-RSP |
| | § | (LEAD CASE) |
| CARVANA LLC, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM ORDER

Before the Court are two of Defendants'[1] motions to strike (**Dkt. Nos. 215, 224**).[2] For the following reasons, the Motion to Exclude Dr. R. Sukumar's Expert Report (**Dkt. No. 215**) is **DENIED**, and the Motion to Strike Expert Opinions of Dr. R. Sukumar (**Dkt. No. 224**) is also **DENIED**. The motion to strike regarding Mr. Occhiogrosso will be further addressed at the April 24 hearing.

### I.    BACKGROUND

On December 31, 2021, Estech filed suit against Defendants[3] alleging that Defendants infringe U.S. Patent Nos. 7,068,684 (the "'684 Patent") and 7,123,699 (the "'699 Patent") (collectively, the "Asserted Patents").[4] The Asserted Patents relate to "information processing

---

[1] Conduent BPO Services, LLC, Conduent Business Process Optimization Services, Inc., Conduent Business Services, LLC, Conduent Legal & Compliance Solutions, LLC, Liberty Mutual Group, Inc., Public Storage (collectively, "Defendants").

[2] Citations to docket and page number correspond to those assigned via ECF.

[3] The initial allegations included claims of infringement against additional defendants that are no longer in the case. *See* Order Dismissing Toyota Motor Manufacturing, Texas, Inc., Dkt. No. 31; Order Dismissing Carvana LLC, Dkt. No. 173; Order Dismissing Extra Space Storage, Inc., Extra Space Management Inc., and Extra Space Properties 107, Dkt. No. 174; Order Dismissing Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Engineering & Manufacturing North America, Inc., Dkt. No. 203; Order Dismissing McKesson Corporation, Dkt. No. 204; Order staying re 99 Cents Only Stores Texas, Inc., 99 Cents Only Stores, LLC, Dkt. No. 345.

[4] Estech's initial complaint also asserted U.S. Patent Nos. 8,391,298 (the "'298 Patent") and 6,067,349 (the "'349 Patent"), and this set of consolidated cases has been stayed as to the '298 Patent and the '349 Patent because the

systems, and in particular, to the use of Voice over IP technology to transmit voice conversations." '699 Patent at 1:10–12; '684 Patent at 1:6–8. The '684 Patent is titled "Quality of Service in a Voice Over IP Telephone System," and the '699 Patent is titled "Voice Mail in a Voice Over IP Telephone System." '699 Patent at cover page; '684 Patent at cover page. Defendants have now filed motions to strike three of Estech's expert reports under Federal Rule Evidence 702 and Rules 26 and 37 of the Federal Rules of Civil Procedure.

## II. DEFENDANTS' MOTION TO EXCLUDE DR. R. SUKUMAR'S EXPERT REPORT (DKT. NO. 215)

### A. Background Facts

Estech hired Dr. R. Sukumar as an expert witness to perform a conjoint analysis—a consumer research survey method—that is being used to "determine customers' willingness to pay for features represented in this patent infringement lawsuit." Sukumar Report, Dkt. No. 215-3 at ¶¶ 10, 12. Dr. Sukumar explains that conjoint analysis provides a way to determine how much consumers value a particular feature of a multi-feature product. *Id.* at ¶¶ 13–15.

In his report, Dr. Sukumar uses conjoint analysis in an effort to quantify a difference in market value for a voice over IP (VoIP) solution/service based on seven attributes: five attributes corresponding to patented features, one distractor attribute, and one price attribute. *Id.* at ¶¶ 10, 12. Using information obtained from the survey, Dr. Sukumar calculates numerical values representing consumer willingness to pay for each of the five attributes corresponding to the patented features. *Id.* at ¶¶ 50–52.

Defendants seek to exclude Dr. Sukumar's entire expert report and opinions concerning the conjoint survey as allegedly failing to satisfy the reliability requirements of Rule 702 and

---

PTAB has issued final written decisions invalidating all of the claims asserted in these cases. *See* Order Partially Granting Stay, Dkt. No. 124 at 1–2.

2

*Daubert*. Motion to Exclude Dr. Sukumar's Report, Dkt. No. 215 at 4; FED. R. EVID. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The issue before the Court is whether Dr. Sukumar's Expert Report is sufficiently reliable to satisfy the standards set forth in Rule 702 and *Daubert*. For the reasons below, the Court holds that it is.

### B.  Law

In a suit for patent infringement, a successful plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. An assessment of the reasonable royalty generally involves opinions by expert witnesses.

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v.* 509 U.S. at 597. However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir.

1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). Ultimately, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

### C. Analysis

Defendants argue that the conjoint survey is unreliable because the features it ascribes to the Asserted Patents are not directly tied to the patented technology. Motion to Exclude Dr. Sukumar's Report, Dkt. No. 215 at 7. As a legal basis for their position, Defendants almost exclusively rely on *Fractus, S.A. v. Samsung*. 6:09-CV-203-LED-JDL, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011) (Granting motion to exclude customer surveys attributing a certain dollar value and identifying importance of percentage of cell phones with internal as opposed to external antennas because "the surveys do not measure how consumers value the purported advantages provided by Plaintiff's technology."). According to Defendants, the appropriate remedy is to exclude Dr. Sukumar's report in its entirety. *Id.*

Here, the attributes identified by Dr. Sukumar are similar to those discussed in the '684 and '699 Patents, and therefore measure how consumers value purported advantages offered by Estech's technology. *See* Dr. Sukumar's Report, Dkt. No. 215-3 at ¶¶ 10, 12; Dr. Sukumar Feature & Level Description, Dkt. No. 215-6 at 4 (identifying eight sub-features within the three survey attributes correlated to the Asserted Patents); *see also* '684 Patent at 12:24–44 and 14:30–46 (describing advantage of the '684 Patent invention as it relates to voice data transmission); '699 Patent at 10:9–31 (describing advantages of the '699 Patent invention). While Defendants seem to

argue that reasonable royalty estimation methodology must be *exactly* tied to the facts of the case, the methodology need only be *sufficiently* tied to the facts of the case. *Summit 6*, 802 F.3d 1283 at 1296 ("while all approximations involve some degree of uncertainty, the admissibility inquiry centers on whether the methodology employed is reliable. A distinct but integral part of that inquiry is whether the data utilized in the methodology is sufficiently tied to the facts of the case.") (citations omitted). Dr. Sukumar has sufficiently tied the features of the Asserted Patents to the features analyzed in his study.

There may be questions regarding the correctness of Dr. Sukumar's methodology and the results from his conjoint study, but assessments as to credibility and correctness are for the factfinder, not the Court. *Summit 6*, 802 F.3d 1283 at 1296 ("But where the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder.") The inquiry on the correctness of the methodology and the results produced in Dr. Sukumar's report can be properly explored through vigorous cross-examination and presentation of contrary evidence. *Daubert*, 509 U.S. at 596 (citation omitted).

### D.  Conclusion

For the reasons above, Defendants' Motion to Exclude Dr. R. Sukumar's Expert Report (Dkt. No. 215) is hereby **DENIED**.

## III. DEFENDANTS' MOTION TO STRIKE EXPERT OPINIONS OF DR. R. SUKUMAR'S AND MR. BENEDICT OCCHIOGROSSO (DKT. NO. 224)

### A. Background Facts

This motion to strike concerns two expert witnesses retained by Estech: (1) Dr. R. Sukumar, who performed a conjoint survey and provided opinions to help approximate a reasonable royalty for damages, and (2) Mr. Benedict Occhiogrosso, who is Estech's technical expert as to the issues of infringement and validity.

#### i. Dr. R. Sukumar's Opinions

As previously described, Dr. R. Sukumar performed a conjoint survey to "determine customers' willingness to pay for features represented in this patent infringement lawsuit." Sukumar Report, Dkt. No. 224-3 at ¶¶ 10, 12. In his report, Dr. Sukumar analyzes seven attributes of a voice over IP (VoIP) solution/service, one of which is a price attribute. *Id*. For the price attribute, Dr. Sukumar relied on a conversation with Estech's CEO, George Platt, and publicly available information, including websites of companies such as Avaya, Mitel, and Microsoft. Sukumar 2/7/23 Dep. Tr, Dkt. No. 224-4 at 20:11–23. Using this information, Dr. Sukumar came up with a price range of $5–$150 as the total price for a VoIP solution with bundled features, and randomly assigned discrete levels of $5, $25, $50, $100 and $150 to the different feature bundles shown to survey respondents. Sukumar Report, Dkt. No. 224-3 at ¶ 21. In addition, Dr. Sukumar describes the selection criteria, including the target sample size of 150 respondents, *id*. at ¶¶ 26–28, the survey process, *id*. at ¶¶ 29–33, the conjoint exercise, *id*. at ¶¶ 34–37, and the analysis of results from 150 of the 5261 respondents who attempted the conjoint survey, *id*. at ¶ 38.

Estech provided Dr. Sukumar's report to Defendants on January 5, 2023 in accordance with the Court's Order. Defendants' Motion to Strike, Dkt. No. 224 at 6; Amended Docket Control

Order, Dkt. No. 100 at 3. On January 13, 2023, in response to Defendants' January 10 request, Estech produced certain facts and data underlying Dr. Sukumar's report. Defendants' Request Email, Dkt. No. 224-6 at 2; Defendants' Request Email Re: Deficiencies, Dkt. No. 224-7 at 2. On February 7, 2023, while Defendants were deposing Dr. Sukumar, Defendants learned that Dr. Sukumar possessed raw data that had not been produced, including (1) a .cho file containing raw data for the conjoint survey responses, and (2) a .att file containing a description of the attributes used in the survey. Defendants' Motion to Strike, Dkt. No. 224 at 6; Sukumar 2/7/23 Dep. Tr., Dkt. No. 224-4 at 89:3–20 and 155:15–156:10.

*ii. Mr. Benedict Occhiogrosso's Opinions*

Mr. Benedict Occhiogrosso prepared infringement and validity reports on behalf of Estech. Occhiogrosso Infringement Report, Dkt. No. 254-3; Ochigrosso Validity Report, Dkt. No. 257-5. In Mr. Occhiogrosso's infringement report, he confirms that he reviewed Dr. Vijay K. Madisetti's[5] assessment of the Asserted Patents, and then states he agrees or disagrees with those assessments. Occhiogrosso Infringement Report, Dkt. No. 254-3 at ¶¶ 109, 110, 111, 113. Mr. Occhiogrosso does not cite to any specific materials that Dr. Madisetti prepared, *see id.*, or list them in the "Materials Considered" exhibit attached to his report. Occhiogrosso Infringement Report Ex. A; Dkt. No. 224-9.

Nevertheless, during his deposition, Mr. Occhiogrosso admitted that he reviewed Dr. Madisetti's infringement report prepared in *Estech Systems, Inc. v. Target Corp.*, 2:20-cv-00123, and used Dr. Madisetti's analysis in formulating his infringement opinions. Occhiogrosso 2/1/23 Dep. Tr., Dkt. No. 224-10 at 20:21–21:8. Notably, Dr. Madisetti's infringement report from *Estech*

---

[5] Dr. Madisetti was previously Estech's technical expert as to infringement and validity in a previous case, *Estech Systems, Inc. v. Target Corp.*, 2:20-CV-00123-JRG (E.D. Tex.). In that case, Dr. Madisetti prepared an infringement report and a validity report.

*v. Target* is subject to a protective order in that case and has not been produced to Defendants in this case. Defendants' Motion to Strike, Dkt. No. 224 at 7; Estech's Response, Dkt. No. 254 at 3. Mr. Occhiogrosso's deposition also revealed that he could not confirm whether paragraphs 47–54 or the doctrine of equivalents arguments appearing on page 34 of his report were in his own words. Occhiogrosso 2/3/23 Dep. Tr., Dkt. No. 224-11 at 217:15–25, 294:12–295:2.

In Mr. Occhiogrosso's rebuttal validity report, he listed Dr. Madisetti's validity report from the earlier *Estech v. Target* case in his materials considered list. Occhiogrosso 2/8/23 Dep. Tr., Dkt. No. 282-1 at 10:14–10:17. In addition, Mr. Occhiogrosso confirms that he reviewed and used Dr. Madisetti's validity report in creating his report. *Id.* at 8:5–9:10. Dr. Madisetti's validity report from *Estech v. Target* is also subject to a protective order in that case and has not been produced to Defendants in this case. Defendants' Motion to Strike, Dkt. No. 224 at 7; Estech's Response, Dkt. No. 254 at 3.

First, Defendants seek to exclude Dr. Sukumar's entire expert report "because he failed to disclose several types of important information and data underlying his report." Defendants' Reply, Dkt. No. 276 at 2. Second, Defendants seek to exclude Mr. Occhiogrosso's entire infringement and validity reports "because he relied on reports that were never produced in this case to Defendants." *Id.*

There are two issues before the Court that apply separately to Dr. Sukumar and Mr. Occhiogrosso: (1) whether the expert satisfied the requirements under Rule 26(a)(2)(B); and (2) whether any such failure to comply with Rule 26(a)(2)(B) was substantially justified or harmless under Rule 37(c)(1). FED. R. CIV. P. 26(a)(2)(B), 37(c)(1). As described below, the Court holds that Dr. Sukumar's opinions either comply with Rule 26 or any lack of compliance was

substantially justified. As for Mr. Occhiogrosso, the Court holds that his failure to comply with Rule 26 was not substantially justified and partial exclusion is warranted.

### B. Law

Rule 26(a)(2)(B) explicitly states that a written report must be "prepared and signed by the witness." FED. R. CIV. P. 26(a)(2)(B). "Experts must undertake their own analyses and may not blindly rely on the opinions of others." *Mobility Workx, LLC v. Cellco P'ship*, No. 4:17-CV-00872, 2019 WL 5721814, at *9 (E.D. Tex. Nov. 5, 2019) (quoting *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2015 WL 12911530, at *2 (E.D. Tex. Sept. 30, 2015)). Rule 26(a)(2)(B) also requires experts to disclose "the facts or data considered by the witness in forming" their opinions. FED. R. CIV. P. 26(a)(2)(B)(ii). Rule 37(c)(1) provides that a party who fails to disclose the information required by Rule 26(a) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The Fifth Circuit applies a four factor test to determine whether the failure to disclose was substantially justified or whether exclusion is appropriate: "(1) the explanation for the failure to identify the [information]; (2) the importance of the [information]; (3) potential prejudice in allowing the [information]; and (4) the availability of a continuance to cure such prejudice." *Majestic Oil, Inc.*, No. 21-20542, 2023 WL 2549892, at *3 (5th Cir. Mar. 17, 2023) (brackets in original) (quoting *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020)).

### C. Analysis

Defendants move to strike (1) Dr. Sukumar's expert report and opinions in their entirety and (2) Mr. Occhiogrosso's expert report and opinions in their entirety.

9

*i. Dr. R. Sukumar's Opinions*

First, Defendants argue that Dr. Sukumar failed to provide the market research underlying the conjoint survey that he used for the price attribute, in determining the quota for participants in his survey to reflect the consumer market, and in choosing a distractor attribute. Defendants' Motion to Strike, Dkt. No. 224 at 5, 8. Yet, Defendants acknowledge Dr. Sukumar's consistent testimony that he did not keep notes and instead relied on a conversation with Estech's CEO as well as publicly available information from Avaya, Mitel, and Microsoft company websites. *Id.* at 8 (citing Sukumar 2/7/23 Dep. Tr., Dkt. No. 224-4 at 20:11–23, 21:5–22:5, 29:8–10, 93:23–94:11).

Second, Defendants argue that Dr. Sukumar failed to timely provide the data and analysis underlying his survey. *Id.* at 6–7. Defendants point out that they learned of two raw data files for the first time during Dr. Sukumar's deposition, and argue those files should have been produced with the service of Dr. Sukumar's expert report so Defendants could properly analyze the data. *Id.* (citing Sukumar 2/7/23 Dep. Tr., Dkt. No. 224-4 at 155:25–156:4 and 89:3–20). Notably, Estech recognized this omission was inadvertent due to Defendants' earlier specific request for another file type—a .ssi file—for data analyzed using Sawtooth or Lighthouse software, and then Estech provided the missing data files to Defendants within 48 hours. Estech's Response, Dkt. No. 254 at 3 (citing Defendants' Request Email, Dkt. No. 224-6 at 2; Sukumar 2/7/23 Dep. Tr., Dkt. No. 224-4 at 155:19–24).

To the extent the market research and underlying data were untimely disclosed, any such failure was substantially justified or harmless. The first factor—the explanation for the failure to identify the information—weighs in favor of inclusion for both the market research, and the data and analysis. Dr. Sukumar explains he did not make notes and essentially all of the information

10

relied upon is publicly available. As far as the data and analysis, Estech concedes it was an inadvertent omission and quickly remedied the problem.

The second factor—the importance of the information—again weighs in favor of inclusion. Dr. Sukumar's report provides a basis for Estech's damages model in a way that attempts to assign value to the different patents and features.

The third factor—prejudice in allowing the information—only slightly favors exclusion, but the minimal prejudice to Defendants is insufficient to warrant exclusion. Defendants assert that the failure to disclose the market research, data, and analysis underlying Dr. Sukumar's survey "is highly prejudicial to *Public Storage*," *id.* at 9 (emphasis added), and the prejudice sometimes applies to all Defendants in circumstances such as inability to test the veracity of Dr. Sukumar's model, *id.* at 10. Defendants conclude that now they are "effectively prevented from cross-examining Dr. Sukumar." Defendants' Reply, Dkt. No. 276 at 3. Nevertheless, Defendants identify two full pages of concepts to challenge the credibility of Dr. Sukumar's survey. Defendants' Motion to Strike, Dkt. No. 224 at 9–11.

Since the prejudice is minimal, the fourth factor—availability of a continuance to cure the prejudice—does not affect the outcome. Thus, Defendants have failed to demonstrate that Dr. Sukumar's report and opinions should be stricken.

    ii. *Mr. Occhiogrosso's Opinions*

First, Defendants argue that Mr. Occhiogosso's infringement report and opinions should be stricken in their entirety because he considered Dr. Madisetti's infringement report that is subject to a protective order from a prior *Estech Systems, Inc. v. Target Corp.*, 2:20-cv-000123-JRG (E.D. Tex.) case, and that prior infringement report was never produced to Defendants in this case. Defendants' Motion to Strike, Dkt. No. 224 at 12–13 (citing Occhiogrosso Infringement

11

Report, Dkt. No. 224-8 at ¶¶ 109, 113–15; Madisetti Infringement Report (6:20-cv-00777-ADA Dkt. 102-6), Dkt. No. 224-12 at ¶¶ 105, 110–12). Mr. Occhiogrosso also could not confirm whether paragraphs 47–54, or the doctrine of equivalents arguments appearing on page 34 of his report, were his original words. Occhiogrosso 2/3/23 Dep. Tr., Dkt. No. 224-11 at 217:15–21, 294:12–295:2. Instead, he concedes that those paragraphs may have been written by Estech's counsel or Dr. Madisetti, which Mr. Occhiogrosso then reviewed and adopted. *Id.* at 217:15–25, 294:12–295:2.

Second, Defendants argue that Mr. Occhiogrosso's invalidity report and opinions should be stricken because he listed Dr. Madisetti's infringement report from the prior *Estech Systems, Inc. v. Target Corp.* case in his "materials considered" exhibit to his invalidity report. Defendants' Motion to Strike, Dkt. No. 224 at 7. Defendants note that Dr. Madisetti's invalidity report was also not produced in this case due to the prior case's protective order. *Id.*; Occhiogrosso 2/8/23 Dep. Tr., Dkt. No. 282-1 at 8:5–11:16. In response to being asked to identify portions of Dr. Madisetti's invalidity report that Mr. Occhiogrosso did not copy, he responded that he recalls adding "some material regarding the re-exam of '684" and "[t]here may have been some other portions that I don't offhand recall." Occhiogrosso 2/8/23 Dep. Tr., Dkt. No. 282-1 at 8:5–13.

Although Estech allowed its expert, Mr. Occhiogrosso, to review and analyze Dr. Madisetti's prior reports subject to the protective order, Estech asserts that the protective order from the prior case excused and even prevented it from disclosing Dr. Madisetti's prior reports. Estech's Response, Dkt. No. 254 at 7. However, if the protective order prevented its disclosure, the protective order should also prevent its use.

Estech attempts to avoid this conclusion by arguing that while he reviewed Dr. Madisetti's opinions, Mr. Occhiogrosso "did <u>not</u> rely" on them, as confirmed by his testimony that all of the

opinions in his report are his own. *Id.* at 8–9 (citing Occhiogrosso 2/1/23 Dep. Tr., Dkt. No. 254-4 at 21:1–3). Defendants respond that Mr. Occhiogrosso's infringement report contains essentially identical paragraphs to those in Dr. Madisetti's prior infringement report. Occhiogrosso Infringement Report, Dkt. No. 224-8 at ¶¶ 109, 113–15; Madisetti Infringement Report (6:20-cv-00777-ADA Dkt. 102-6), Dkt. No. 224-12 at ¶¶ 105, 110–12. Defendants raise similar concerns as to Mr. Occhiogrosso's invalidity report through his deposition responses. Occhiogrosso 2/8/23 Dep. Tr., Dkt. No. 282-1 at 8:5–13.

Nothing prohibits an expert from borrowing language from other sources in preparing his report. The better practice is to always acknowledge the contributions of others. If an expert attempts to pass off the work of others as his own, that can raise issues of credibility. However, what Rule 26 requires is that the report clearly set forth the opinions of the expert and the basis for them, no matter where the words originated. The Court is satisfied that Dr. Occhiogrosso has sworn that the opinions in the report are his opinions. Accordingly, the fact that some of the language appears to be borrowed from others does not justify striking the report.

The more problematic issue is basing an opinion on documents, like the Madisetti reports, that are not disclosed to Defendants. Mr. Occhiogrosso was required to disclose that he reviewed the reports once Plaintiff's counsel provided them to him. However, he is not permitted to base any opinions on those confidential sources. It is plausible that Mr. Occhiogrosso did not base any of his opinions on Dr. Madisetti's reports, especially since the accused products and invalidity theories in that earlier case were different from those that he was opining on here. For the avoidance of any doubt, however, Plaintiff is ordered to provide the Court with full copies of his reports, and those of Dr. Madisetti, by April 21, 2023, and be prepared to demonstrate to the Court at the April 24 hearing that the opinions of Mr. Occhiogrosso stand on their own. Counsel for

Defendants should be prepared to show the Court any parts of the deposition testimony that support their contention that the opinions of Mr. Occhiogrosso are dependent on Dr. Madisetti's reports.

### D. Conclusion

For the reasons above, Defendants' Motion to Strike Expert Opinions of Dr. R. Sukumar (Dkt. No. 224) is hereby **DENIED.** The motion regarding Mr. Occhiogrosso will be further addressed at the April 24 hearing.

**SIGNED this 13th day of April, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE