**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ESTECH SYSTEMS IP, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-cv-0482-JRG-RSP |
| | § | (LEAD CASE) |
| CARVANA LLC, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Before the Court are two of Defendants'[1] motions for summary judgment (**Dkt. Nos. 212, 213**).[2] For the following reasons, the motions should be **DENIED**.

## I.     BACKGROUND

On December 31, 2021, Estech filed suit against Defendants[3] alleging that Conduent infringes U.S. Patent No. 7,123,699 (the "'699 Patent"),[4] and Liberty Mutual infringes both the '699 Patent and U.S. Patent No. 7,068,684 (the "'684 Patent")[5] (collectively, the "Asserted

---

[1] Conduent BPO Services, LLC, Conduent Business Process Optimization Services, Inc., Conduent Business Services, LLC, Conduent Legal & Compliance Solutions, LLC (collectively, "Conduent"), and Liberty Mutual Group, Inc., (together with Conduent, "Defendants"). Defendant Public Storage remains a defendant accused of infringement in this case who joins the motion for summary judgment of invalidity, but the motion for summary judgment of non-infringement applies to the Conduent and Liberty Mutual defendants.

[2] Citations to docket and page number correspond to those assigned via ECF.

[3] The initial allegations included claims of infringement against additional defendants that are no longer in the case. *See* Order Dismissing Toyota Motor Manufacturing, Texas, Inc., Dkt. No. 31; Order Dismissing Carvana LLC, Dkt. No. 173; Order Dismissing Extra Space Storage, Inc., Extra Space Management Inc., and Extra Space Properties 107, Dkt. No. 174; Order Dismissing Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Engineering & Manufacturing North America, Inc., Dkt. No. 203; Order Dismissing McKesson Corporation, Dkt. No. 204; Order dismissing 99 Cents Only Stores Texas, Inc., 99 Cents Only Stores, LLC, Dkt. No. 341.

[4] Conduent Joint Pretrial Order, Dkt. No. 332 at 4 ("Estech is asserting claims 1 and 2 of the '699 Patent.").

[5] Liberty Mutual Joint Pretrial Order, Dkt. No. 331 at 3 ("Estech asserts claims 29–34, 36, and 37 of the '684 Patent and claims 1 and 2 of the '699 Patent.").

Patents").[6] The Asserted Patents relate to "information processing systems, and in particular, to the use of Voice over IP technology to transmit voice conversations." '699 Patent at 1:10–12; '648 Patent at 1:6–8. Defendants have now filed motions for summary judgment of non-infringement and invalidity of the '684 and '699 Patents.

## A. The '684 Patent

The '684 Patent issued from U.S. App. No. 09/775,018 (the "'018 Application"), which was filed on February 1, 2001. The '684 Patent is titled "Quality of Service in a Voice Over IP Telephone System." '684 Patent, Dkt. No 86-1 at 2. Claims 29, 36, and 37 are independent method claims that include substantially similar limitations. *Id.* at 25. Every asserted independent claim recites a method of using "an information handling system" comprising a telephone and "a workstation coupled to the hub through the telephone," wherein the method comprises the steps of "sufficiently throttling the data sent from the workstation to the telephone …." *Id.* Therefore, claim 29 is illustrative for purposes of the motions for summary judgment. Claim 29 recites:

> 29. In an information handling system comprising a hub, a multimedia server ("multimedia server") coupled to the hub, a telephone coupled to the hub, a workstation coupled to the hub through the telephone, and a data server coupled to the hub, a method comprising the steps of:
> transferring data from the workstation to the telephone, wherein the data sent from the workstation is addressed for transmission to the data server;
> communicating audio information between the telephone and the multimedia server; and
> sufficiently ***throttling the data sent from the workstation to the telephone*** to increase a rate of transfer of the audio information during the communicating step, wherein the throttling step further comprises the step of monitoring an amount of the audio information being received by the telephone from the multimedia server.

*Id.* (emphasis added to highlight the recitation at issue in the non-infringement motion).

---

[6] Estech's initial complaint also asserted U.S. Patent Nos. 8,391,298 (the "'298 Patent") and 6,067,349 (the "'349 Patent"), and this set of consolidated cases has been stayed as to the '298 Patent and the '349 Patent as the PTAB had issued final written decisions invalidating all of the claims asserted in these cases. *See* Order Partially Granting Stay, Dkt. No. 124 at 1–2.

### A.  The '699 Patent

Estech is asserting independent claims 1 and 2 of the '699 Patent against Liberty Mutual, Conduent, and Public Storage. Conduent Joint Pretrial Order, Dkt. No. 332 at 4, Liberty Mutual Joint Pretrial Order, Dkt. No. 331 at 3, Public Storage Joint Pretrial Order, Dkt. No. 333 at 3. The '699 Patent is titled "Voice Mail in a Voice Over IP Telephone System." '699 Patent, Dkt. No. 86-2 at 1. The '699 Patent issued from U.S. App. No. 10/210902, which is a continuation-in-part of and claims priority to the '018 Application, which issued as the '684 Patent. '699 Patent, Dkt. No. 1-3 at 2. Accordingly, the earliest possible effective filing date of the '699 Patent is February 1, 2001. Independent claim 1 recites:

> 1. In a telecommunications system, a method comprising the steps of:
> storing a voice mail message in a voice mail box in a voice mail system within a first LAN;
> coupling a second LAN to the first LAN over a WAN, wherein the first LAN, the second LAN, and the WAN operate under a routable network protocol;
> providing a sensory indication on a telecommunications device within the second LAN that the voice message is stored in the voice mail box within the first LAN; and
> the telecommunications device accessing the voice mail system within the first LAN to listen to the voice message stored in the voice mail box,
> wherein the step of the telecommunications device accessing the voice mail system within the first LAN to listen to the voice message stored in the voice mail box further comprises the steps of:
> establishing a channel between the first and second LANs over the WAN;
> coupling an audio path over the channel between the telecommunications device and the voice mail box; and
> streaming voice data containing the voice message from the voice mail box to the telecommunications device over the audio path, wherein the establishing step further comprises the steps of:
> in response to an input at the telecommunications device, **_sending a user mail box connection message from the second LAN to the first LAN_** requesting a channel, **_wherein the user mail box connection message includes an extension associated with the telecommunications device and an identification of the voice mail box_**;
> assigning the channel by the first LAN;
> and sending a connection established message from the first LAN to the second LAN.

'699 Patent, Dkt. No. 86-2 at 21. (emphasis added to highlight the recitation at issue in the non-infringement motion). In addition, independent claim 2 recites:

> 2. In an information handling system comprising a first LAN, a second LAN, and a WAN coupling the first LAN to the second LAN using a TCP/IP protocol, a method comprising the steps of:
> *in response to selection of a voice mail access input and selection of a direct station select input at an IP telephone within the first LAN, sending a request from the first LAN to the second LAN over the WAN to establish a connection between the first LAN and the second LAN,* wherein the direct station select input identifies a voice mail box within the second LAN;
> establishing an audio path over the connection between the voice mail box and the IP telephone; and
> playing a voice message stored in the voice mail box over a speaker in the IP telephone as a result of sending audio data containing the voice message over the audio path.

*Id.* (emphasis added to highlight the recitation at issue in the non-infringement motion).

## II.  LAW

### A.  Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The

burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. *Liberty Lobby*, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific facts which meet his burden of proof. *Id.* "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy*, 44 F.2d at 312 (citing *Liberty Lobby*, 477 U.S. at 247).

## B. Infringement

Determining whether a product or method infringes a patent is a two-step process. *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*) (citations omitted), *aff'd*, 517 U.S. 370 (1996)). The Court must first determine the proper construction of the asserted claims, which is a matter of law. *Id.* (citing *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 (Fed. Cir. 2008), and *Shire Dev., LLC v. Watson Pharm.*, 787 F.3d 1359, 1364 (Fed. Cir. 2015)). At the second step, the finder of fact must determine whether the asserted claim, as properly construed, "reads" on the product or method. *Id.* (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009)).

Method claims are infringed if each and every step of the method has been performed. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014). ("A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the

steps are carried out.") (citing " *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 344, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961)).

"Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353–54 (Fed. Cir. 1998)). To be entitled to summary judgment of noninfringement, the moving party must demonstrate that the facts and inferences, when viewed in the light most favorable to the nonmoving party, would not persuade a reasonable jury to return a verdict in favor of the nonmoving party. *See Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1370 (Fed. Cir. 2012)

### C. Priority Date and Written Description

"It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *In re Chu*, 66 F.3d 292, 297 (Fed.Cir.1995)); *see also Augustine Med., Inc. v. Gaymar Indus., Inc.,* 181 F.3d 1291, 1302–03 (Fed.Cir.1999) ("Different claims of [a CIP] application may therefore receive different effective filing dates.... Subject matter that arises for the first time in [a] CIP application does not receive the benefit of the filing date of the parent application."). To satisfy the written description requirement, the disclosure of the prior application must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession *of the invention.*" *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563–64 (Fed.Cir.1991). To satisfy the written description requirement, "the missing descriptive matter must necessarily be present in

6

the [original] application's specification such that one skilled in the art would recognize such a disclosure." *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1159 (Fed.Cir.1998); *see also Martin v. Mayer,* 823 F.2d 500, 505 (Fed.Cir.1987) (holding that the written description requirement is "not a question of whether one skilled in the art *might* be able to construct the patentee's device from the teachings of the disclosure .... Rather, it is a question whether the application necessarily discloses that particular device") (emphasis in original). "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis*, 522 F.3d at 1307.

## III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (DKT. NO. 212)

Defendants move for summary judgment of non-infringement of the '699 Patent and the '684 Patent on the ground that Estech failed to present sufficient evidence that Defendants practice certain steps of every accused method claim. Defendants' Motion, Dkt. No. 212 at 11.

### A.  The "user mail box connection message" of the '699 Patent

First, Defendants argue that Estech failed to identify evidence to create a genuine dispute of material fact that the accused products used by Defendants "send[] a user mail box connection message from the second LAN to the first LAN … wherein the user mail box connection message includes an extension associated with the telecommunications device *and* an identification of the voice mail box," as required by independent claim 1 of the '699 Patent. Defendants' Motion, Dkt. No. 212 at 7. In other words, Defendants contend that Estech failed to provide evidence that Defendants' accused products use a *single* message that contains *both* the recited "extension" and "identification" of claim 1. *Id.* at 12.

Estech's infringement expert, Mr. Ochiogrosso, alleges infringement by identifying SIP messages for the Genesys accused products used by Conduent and one Avaya accused product ("Avaya Agent for Desktop") used by Liberty Mutual. Exhibit CONDUENT-699 to Occhiogrosso Infringement Report, Dkt. No. 212-4 at 3–5; Exhibit LM-699 to Occhiogrosso Supplemental Infringement Report, Dkt. No. 212-6 at 3–4. In addition, Mr. Occhiogrosso opines that other Avaya products, used by Conduent and Liberty Mutual, send an H.323 INFO message in a manner that satisfies the "user mail box connection message" limitation of claim 1. Estech's Response, Dkt. No. 256 at 13 (citing Occhiogrosso 2/3/2023 Dep. Tr., Dkt. No. 256-6 at 405:11–408:15).

### 1. SIP Messages from the Genesys Softphone and Avaya Agent Desktop

Mr. Occhiogrosso opines the claim 1 limitation at issue is met by (1) the "Voicemail" button in the Genesys softphone and (2) the "MESSAGES" button on the Avaya Agent Desktop, each of which causes the device to send a Session Initial Protocol (SIP) INVITE message to the Genesys platform. Exhibit CONDUENT-699 to Occhiogrosso Infringement Report, Dkt. No. 212-4 at 4–5. Exhibit LM-699 to Occhiogrosso Supplemental Infringement Report, Dkt. No. 212-6 at 3–4. Mr. Occhiogrosso further opines that two portions of the SIP-INVITE message satisfy the claim limitation: (1) the "From" field includes the claimed "extension associated with the VoIP Telephony Device," and (2) "SIP URI" in the SIP INVITE message includes the claimed identification of the voice mail box. Exhibit CONDUENT-699 to Occhiogrosso Infringement Report, Dkt. No. 212-4 at 4–5; Exhibit LM-699 to Occhiogrosso Supplemental Infringement Report, Dkt. No. 212-6 at 3–4.

Defendants initially argue that Estech fails to cite any evidence of infringement because Mr. Occhiogrosso relies on Estech's documents including exemplary SIP messages rather than Defendants' documents showing the actual contents of the SIP messages. Defendants' Motion,

Dkt. No. 212 at 13 (citing Exhibit CONDUENT-699 to Occhiogrosso Infringement Report, Dkt. No. 212-4 at 8); *id.* at 17–18 (citing Occhiogrosso Supplemental Infringement Report, Dkt. No. 227-5 at ¶ 16; Exhibit LM-699 to Occhiogrosso Supplemental Infringement Report, Dkt. No. 212-6 at 3–4). According to Defendants, the exemplary SIP messages (1) fail to include an extension associated with a telephone, (2) fail to identify a voice mail box, and (3) do not establish how the accused products function. *Id.* at 14–15.

Estech responds that the accused products are SIP-compliant. In addition, Mr. Occhiogrosso relies the Session Initial Protocol (SIP) standard itself, his knowledge of how the SIP standard works, and the Control of Service Context using SIP Request-URI to determine the accused products infringe. Estech's Response, Dkt. No. 256 at 11–12. Estech asserts that the SIP standard states that the "From" field is used to identify the extensions in a phone call. *Id.* at 12 (citing SIP: Session Initiation Protocol, Dkt. No. 256-4).

Here, the Court finds that the limitation "sending a user mail box connection message from the second LAN to the first LAN … wherein the user mail box connection message includes an extension associated with the telecommunications device and an identification of the voice mail box," recited in claim 1 of the '699 Patent claims, as construed, may encompass devices that send the SIP INVITE message in a manner that practices the SIP standard. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("We hold that a district court may rely on an industry standard in analyzing infringement. If a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement.") Accordingly, Estech may satisfy its burden to prove infringement as to this limitation if it can establish the relevant accused products—the Genesys softphones or the Avaya Agent for Desktop—send the SIP INVITE message in a manner that practices the SIP standard. *Id.* ("We agree that claims should be compared to the accused product

to determine infringement. However, if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product.").

There are instances in which "it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes." *Id.* at 1328. However, Estech's infringement expert, Mr. Occhiogrosso, opines that the limitation is met by the accused products using the SIP INVITE message in a manner that practices the SIP standard (IETF RFC 3261) and a related standard that describes using the "SIP URI" in the context of voicemail. Estech's Sur-reply, Dkt. No. 290 at 5. To the extent any relevant sections of the standards are optional, Estech must prove that the accused products implement them to prove infringement. *Fujitsu*, 620 F.3d at 1328.

Defendants' argument that Estech's reliance on the SIP standards can be dismissed as procedurally untimely is unpersuasive. Defendants themselves identify that Mr. Occhiogrosso's report and accompanying exhibits contain the SIP standards on which he relies. Therefore, Estech has evidence to support the notion that the accused products sending the SIP INVITE message in a manner that practices the SIP standard would necessarily result in infringement, unlike *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277–78 (Fed. Cir. 2004) (citation omitted). In addition, Defendants acknowledge that Estech presents evidence that the SIP URI is mandatory, unlike in *Broadcom v. International Trade Commission*, 542 F.3d 894, 899 (Fed. Cir. 2008). Defendants' Reply, Dkt. No. 269 at 8 (citing Estech's Response, Dkt. No. 256 at 12 relying on SIP: Session Initiation Protocol, Dkt. No. 256-4 at 3, 5, 13–23).

Viewing all facts and inferences in Estech's favor, a reasonable jury could find that the SIP-compliant accused products—the Genesys softphones or the Avaya Agent for Desktop—do, in fact, send the SIP INVITE message as defined by the SIP standard. And from that, a

reasonable jury could find that SIP INVITE message sent by the accused products "includes an extension associated with the telecommunications device and an identification of the voice mail box." Accordingly, a genuine dispute of material fact exists as to whether the accused products employing SIP Messages satisfy the "user mail box connection message" limitation for purposes of infringement.

### 2.  H.323 INFO Message from the Avaya Accused Products

Defendants moved for summary judgment of non-infringement on the basis that Estech failed to present evidence that messages sent by the Avaya accused products—(1) the H.225 SETUP message and (2) the H.323 INFO message—satisfy the "user mail box connection message" limitation of claim 1. Defendants' Motion, Dkt. No. 212 at 15–16. The primary dispute in the briefing concerns the H.323 INFO message.

Defendants argue that Estech's infringement contentions and opening expert report identify the H.323 SETUP message as allegedly satisfying the claimed "connection message," but now Estech contends it is the H.323 INFO message that infringes. Defendants' Reply, Dkt. No. 269 at 9. Defendants contend that Estech's reliance on the H.323 INFO message is untimely and improper. *Id.* (citing *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 WL 2267212, at *3 (E.D. Tex. May 28, 2019) for the four-factor test to exclude late-produced evidence).

Here, Defendants acknowledge they produced a trace log *after* receiving Estech's infringement report and relied on that to rebut Mr. Occhiogrosso's opinions. *Id.* Further, Defendants asked Mr. Occhiogrosso about his opinions concerning the "fast start" H.323 message flow and him identifying the H.323 INFO messages satisfying the "user mail box connection message" of claim 1. *See id.* at 9–10; FED. R. CIV. P. 26(e) Advisory Committee's Notes to 1993 Amendments ("There is, however, no obligation to provide supplemental or

corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when … an expert during a deposition corrects information contained in an earlier report."). Even under the four-factor framework, Defendants' lack of diligence in generating the trace log that gave rise to this circumstance, the importance of the correct information for Estech to establish infringement, and the prejudice to Estech of potentially not being able to establish infringement outweighs striking the evidence. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564 (5th Cir. 2004). Accordingly, Mr. Occhiogrosso is permitted to testify on behalf of Estech as to whether the H.323 INFO message satisfies the "connection message" limitation.

Defendants recognize Mr. Occhiogrosso relies on the H.323 INFO message as a single message that contains both the recited "extension" and "identification" required by claim 1. *See* Defendants' Motion, Dkt. No. 212 at 15–16. Defendants argue that Mr. Occhiogrosso stated during deposition that the H.323 INFO message "has an IP address which is ***an alias*** for the extension," but not necessarily an extension itself. *Id.* at 16 (citing Occhiogrosso 2/3/2023 Dep. Tr., Dkt. No. 212-10 at 406:2–24). Accordingly, Defendants themselves identify a genuine dispute of material fact as to whether the H.323 INFO message satisfies the "connection message" recited in claim 1.

Viewing all facts and inferences in Estech's favor, a reasonable jury could find that the Avaya accused products that send the H.323 INFO message satisfy the "user mail box connection message" limitation for purposes of infringement.

### 3. Doctrine of Equivalents

Defendants argue that Estech's doctrine of equivalents theories regarding the Genesys SIP message and Avaya H.225 SETUP message also fail as a matter of law because they would vitiate claim elements. Defendants' Motion, Dkt. No. 212 at 16–17 (citing *Warner-Jenkinson Co.*

*v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997)). In essence, Defendants argue that Estech cannot rely on a single "From" field to satisfy both the claimed "extension" and "identification" recitations of claim 1 because the Court's claim construction order allegedly prohibits doing so. Defendants' Reply at 10.

Estech responds that Mr. Occhiogrosso opines that the "From" header field contains the logical identity of the extension and that same information can also be used to identify the voice mail box. Estech's Response, Dkt. No. 256 at 15.

Here, Defendants mischaracterize the language of the Court's Claim Construction Order. The term being construed was "storing a voice mail message in a voice mail box in a voice mail system within a first LAN," and the Court rejected Defendants' proposed construction that would improperly remove a limitation from the claims. Claim Construction Order, Dkt. No. 197 at 24 ("Under Defendants' construction the 'identification of the voice mail box' would be rendered superfluous because the 'extension associated with the telecommunications device' *would itself identify* the voice mail box."). *Id.* at 24 (emphasis added). In other words, Defendants' proposed construction would have improperly *eliminated* one of two separate claim requirements by collapsing the two requirements into a single requirement. So the Court rejected that position. Now, distinct from the issue of the claimed "user mail box connection message" including two separate requirements, is the issue of whether the same information can satisfy *both* of those two requirements for purposes of infringement.

Nothing in the Claim Construction Order prohibits the same information of the "user mail box connection message" from serving as *both* (1) "an extension associated with the telecommunications device" and also (2) "an identification of the voice mail box." That is exactly what Estech agues—that the "From" header field contains information satisfying both (1) "an extension associated with the telecommunications device," and (2) "an identification of the

13

voice mail box." Thus, Mr. Occhiogrosso's opinions do not vitiate the "user mail box connection message" limitation. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1330 (Fed. Cir. 2009).

Viewing all facts and inferences in Estech's favor, a reasonable jury could find that the accused products using the SIP INVITE message containing the "From" header field satisfy the "user mail box connection message" limitation under the doctrine of equivalents. Thus, the motion for summary judgment of non-infringement as to claim 1 of the '699 Patent should be denied.

**B.  The "call appearance button" and "messages" of the '699 Patent**

Second, Defendants assert that Estech failed to identify evidence to create a genuine dispute of material fact that the accused products used by Defendants "send[] a request … to establish a connection between the first LAN and the second LAN" "in response to selection of a voice mail access input and selection of a direct station select input at an IP telephone within the first LAN," as required by independent claim 2. Defendants' Motion, Dkt. No. 212 at 7. Estech agrees that the '699 Patent requires the selection of two inputs to access voicemail from an IP Telephone: (1) "selection of a voice mail access input," and (2) "selection of a direct station select input." Estech's Response, Dkt. No. 256 at 16.

Defendants argue that Mr. Occhiogrosso identifies the "line appearance button" on the Avaya phones as satisfying the claim elements "to select a particular line" and, separately, "the messages button to listen to voicemail that is stored on its Avaya platform." *Id.* at 18 (citing Exhibit CONDUENT-699 to Occhiogrosso Infringement Report, Dkt. No. 212-4 at 10–11; Exhibit LM-699 to Occhiogrosso Supplemental Infringement Report, Dkt. No. 212-6 at 10. Defendants also acknowledge that Mr. Occhiogrosso refers to a "call appearance button" as the claimed "selection of a direct station select input," but again argue his opinions are untimely.

Defendants' Reply, Dkt. No. 269 at 11 (citing *Uniloc*, 2019 WL 2267212, at *3 for the 4-factor test regarding untimely disclosure).

Here, Defendants know that Mr. Occhiogrosso corrected his opinion from the "line appearance button" to the "call appearance button" during deposition. *Id*.; *see also* FED. R. CIV. P. 26(e) Advisory Committee's Notes to 1993 Amendments. Even under the four-factor framework, the importance of the correct information for Estech's infringement theory, and the prejudice to Estech of potentially not being able to establish infringement outweighs striking the evidence. *Primrose* 382 F.3d at 564. Aside from his correction during deposition, Mr. Occhiogrosso's report identifies the use of the "call appearance button" to select a particular line on which to check voicemail and "the messages button to listen to voicemail" on multi-line phones. Exhibit CONDUENT-699 to Occhiogrosso Infringement Report, Dkt. No. 256-5 at 48–51 (citing Avaya 9600 Series Telephone User Guide and other user manuals for the accused products).

Viewing all facts and inferences in Estech's favor, a reasonable jury could find that the Defendants use both the "call appearance button" and "messages" button, as required by the claims, when checking voicemail on the accused products. Thus, the motion for summary judgment of non-infringement as to claim 2 of the '699 Patent should be denied.

### C.  The "throttling" Limitation of the '684 Patent

Third, Defendants move for summary judgment of non-infringement of the '684 Patent based on Estech's alleged failure to identify evidence sufficient to create a dispute of material fact that the accused products used by Liberty Mutual perform the step of "throttling the data sent from the workstation to the telephone," as required by all of the asserted claims. Defendants' Motion, Dkt. No. 212 at 7.

Defendants essentially argue that Mr. Occhiogrosso's infringement opinions fail as a matter of law because he contends that "throttling the data sent from the workstation to the telephone" does not necessarily require *the act* of throttling to originate or occur in a *locationally isolated position* between the workstation and the telephone. *See* Defendants' Motion, Dkt. No. 212 at 20–21. Defendants confirm their understanding of the claim limitation by asserting it identifies both (1) which data is being throttled *and* (2) where the throttling is occurring. Defendants' Reply, Dkt. No. 269 at 11.

The relevant limitation of the claims in the '684 Patent recites, "sufficiently throttling the data sent from the workstation to the telephone to increase a rate of transfer of the audio information during the communicating step." Mr. Bress's annotated FIG. 1 has been reproduced below for reference. Bress Non-infringement Report, Dkt. No. 212-12 at ¶ 40.



**Fig. 1**

The Claim Construction Order states that "the plain language of the claim requires 'throttling' the 'data sent from the workstation to the telephone,' which requires more than merely an increase in the rate of audio information." Claim Construction Order, Dkt. No. 197 at 117. Liberty Mutual contends that is exactly what Estech's infringement theory does—it

16

eliminates the recitation "from the workstation to the telephone," which requires the throttling occur **between** the workstation and telephone. Defendants' Reply, Dkt. No. 269 at 12. Rather, Mr. Occhiogrosso opines that Liberty Mutual's accused products "throttle[] the data," as evidenced by Avaya's documentation, because the products use "traffic shaping" that results in "delays [of] certain types of data to prioritize other types of data." Exhibit LM-684 to Occhiogrosso Infringement Report, Dkt. No. 212-7 at 3–4. Mr. Occhiogrosso explains that this involves prioritizing audio information over data traffic in the network, which both (1) throttles the data sent from the workstation to the telephone by delaying that data, and (2) increases the rate of transfer of audio information on a bit-per-second or packet-per-second basis due to the prioritization. *Id.* at 3–10.

From the briefing emerge genuine disputes of material fact in the context of the claims— *e.g.*, (1) does delaying data traffic in the network as a result of prioritizing audio information cause throttling of the data sent from the workstation to the telephone; and (2) do the accused products prioritizing audio information over data traffic **in the network** *affect* the data sent from the workstation to the telephone? Since Liberty Mutual answers "no" to these questions, it contends its accused products do not infringe. In contrast, because Estech answers "yes" to these questions, it takes the view that the accused products infringe.

Thus, genuine disputes of material fact exist that cannot properly be decided on a motion for summary judgment. Accordingly, the motion for summary judgment of non-infringement of the asserted claims of the '684 Patent should be denied.

## IV.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF PRIORITY AND INVALIDITY (DKT. NO. 213)

Defendants[7] move for summary judgment that asserted claims 1 and 2 of the '699 Patent are invalid because Estech allegedly failed to create a genuine dispute that (1) the '699 Patent is entitled to the February 1, 2001 priority date of the '018 Application, and (2) the IP Series Feature Phone embodies claims 1 and 2 of the '699 Patent, and therefore invalidates the '699 Patent. Defendants' Motion, Dkt. No. 213 at 4. Since the Court denied Defendants' motion for leave to amend its invalidity contentions to add the IP-Series Feature Phone, *see* Order at Dkt. No. 247, the issue of whether claims 1 and 2 of the '699 Patent are invalid over the IP Series Feature Phone is now moot. *See* Defendants' Reply, Dkt. No. 270 at 4 n.1.

Defendants primarily argue that asserted claims 1 and 2 of the '699 Patent are not entitled to the benefit of the February 1, 2001 filing date of the '018 Application because the '018 Application did not have adequate written description support for either (1) the claimed "sensory indication" or (2) the identification of a "voice mail box". Defendants' Motion, Dkt. No. 213 at 3–4. Defendants contend that the issue with "sensory indication" is an issue of claim breadth compared to what was disclosed in the '018 Application. *Id.* at 8. Defendants also argue that the '018 Application entirely fails to disclose identifying "a voice mail box," as claimed.

As a separate matter, Defendants assert that it is Estech's burden to prove that it is entitled to the priority date of the CIP parent '018 Application, and Estech failed to do so. Defendants' Reply, Dkt. No. 270 at 5 (citing *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1303 (Fed. Cir. 2008)). In *PowerOasis*, the Federal Circuit held that the patentee had the burden to come forward with evidence to prove entitlement to an earlier filing date *when it was undisputed* that a certain reference was invalidating prior art. 522 F.3d at 1302–03, 1305 (emphasis added) ("It is also undisputed that prior to June 15, 1999, the MobileStar Network contained all of the same features that form the basis of PowerOasis's allegation that the T–

---

[7] Liberty Mutual, Conduent, and Public Storage (collectively, "Defendants") for purposes of this motion.

Mobile HotSpot Network infringes its patents."). Here, in contrast, Estech contends that none of Defendants' references are invalidating prior art—Defendants acknowledge this in their briefing.

### 1. The Claimed "sensory indication"

The foundation of Defendants' argument is that the sole example of a "sensory indication" in the '018 Application is a visual indication. Defendants' Reply, Dkt. No. 270 at 5 (citing Occhiogrosso Validity Report, Dkt. No. 213-5 at ¶ 16). According to Defendants, the lone visual indication is insufficient to broadly claim the genus "sensory indication." *Id.* at 9 (citing *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010) (*en banc*)).

At his deposition, Mr. Occhiogrosso explained that parts of the '018 Application provide support for an audio indication in addition to the visual indication. Occhiogrosso 2/1/2023 Dep. Tr., Dkt. No. 257-4 at 113:2–117:11 (citing '018 Application, Dkt. No. 257-3 at 7–12 ("Separating the functionality in this way permits the IP telephony device 105 to send tones or voice to one speaker while allowing a normal conversation over the other.")). Accordingly, Mr. Occhiogrosso argues that the claimed "sensory indication" of the '699 Patent is adequately supported by the '018 Application because it explicitly discloses speakers that could inherently be used for an audio indication. *Id.* at 116:22–117:3. *PowerOasis*, 522 F.3d at 1306 ("This requires that the written description actually or inherently disclose the claim element.") Thus, the parties do not dispute that the visual indication was adequately disclosed, and there is a fact dispute as to whether an audio indication was adequately disclosed.

There is a genuine dispute of material fact as to whether the claimed "sensory indication" finds written description support from the '018 Application. Further, while possible, it is unlikely one of ordinary skill in the art would recognize that the claimed "sensory indication" for VoIP includes smell or taste—that leaves sight, sound, and touch as the remaining options. *Vas–Cath Inc.,* 935 F.2d at 1563–64. Viewing all facts and inferences in Estech's favor, a reasonable jury

could find that the '018 Application sufficiently demonstrates the inventors had possession of the claimed "sensory indication" as of February 1, 2001.

### 2. Identification of a "voice mail box"

Defendants also argue that the asserted claims of the '699 Patent are not entitled to the priority date of the '018 Application because the '018 Application fails to disclose (1) a "connection message" that includes "an identification of the voice mail box" (claim 1), and (2) the "direct station select input" that "identifies a voice mail box" (claim 2). Defendants' Motion, Dkt. No. 213 at 11. But Defendants acknowledge Mr. Occhiogrosso identifies five portions of the '018 Application as providing support for both of these claim elements. *Id.* at 12 (citing Occhiogrosso Invalidity Report, Dkt. No. 213-5 at ¶ 13 (identifying '018 Application at 1:22–2:3, 11:10–19, 15:6–12, 34:1–9, Figs. 1-8)).

Mr. Occhiogrosso explains why, in his opinion, the disclosure in those parts of the '018 Application conveys that the inventors were in possession of the claimed "user mail box connection message" that includes "an identification of the voice mail box" limitation of claim 1. Occhiogrosso Invalidity Report, Dkt. No. 213-5 at ¶ 14. Furthermore, he also opines that the same portion of the '018 Application discusses the "DSS key" in a manner conveying that the inventors were in possession of the claimed "direct station select input" that "identifies a voice mail box" limitation of claim 2. *Id.*

Therefore, there is a genuine dispute of material fact as to whether the '018 Application demonstrates the inventors had possession of the claimed "connection message" and "direct station select input" that identify the "voice mail box" as claimed in the '699 Patent. Viewing all facts and inferences in Estech's favor, a reasonable jury could find that the '018 Application to sufficiently establishes that the inventors had possession of the claimed invention from the '699 Patent as of February 1, 2001.

## V.    CONCLUSION

For these reasons, genuine disputes of material fact remain as to the '684 Patent concerning issues of infringement, and the '699 Patent concerning issues of infringement and invalidity. Accordingly, the Court should **DENY** the motions for summary judgment (Dkt. Nos. 212, 213).

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report by **not later than May 9, 2023** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 2nd day of May, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE