IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ESTECH SYSTEMS IP, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00482-JRG-RSP |
| | § | (LEAD CASE) |
| CARVANA LLC, | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM ORDER**

Before the Court are three of Plaintiff Estech Systems IP, LLC's motions to strike (**Dkt. Nos. 217, 219, 220**).[1] For the following reasons, each motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.      **BACKGROUND**

On December 31, 2021, Estech filed suit against Defendants[2] alleging that Conduent infringes U.S. Patent No. 7,123,699 (the "'699 Patent"),[3] and Liberty Mutual infringes both the '699 Patent and U.S. Patent No. 7,068,684 (the "'684 Patent")[4] (collectively, the "Asserted

---

[1] Citations to docket and page number correspond to those assigned via ECF.

[2] Conduent BPO Services, LLC, Conduent Business Process Optimization Services, Inc., Conduent Business Services, LLC, Conduent Legal & Compliance Solutions, LLC (collectively, "Conduent"), and Liberty Mutual Group, Inc., (together with Conduent, "Defendants"). Defendant Public Storage remains a defendant accused of infringement in this case, but the first two motions apply to the Conduent and Liberty Mutual defendants. The initial allegations included claims of infringement against additional defendants that are no longer in the case. *See* Order Dismissing Toyota Motor Manufacturing, Texas, Inc., Dkt. No. 31; Order Dismissing Carvana LLC, Dkt. No. 173; Order Dismissing Extra Space Storage, Inc., Extra Space Management Inc., and Extra Space Properties 107, Dkt. No. 174; Order Dismissing Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Engineering & Manufacturing North America, Inc., Dkt. No. 203; Order Dismissing McKesson Corporation, Dkt. No. 204; Order dismissing 99 Cents Only Stores Texas, Inc., 99 Cents Only Stores, LLC, Dkt. No. 341.

[3] Conduent Joint Pretrial Order, Dkt. No. 332 at 4 ("Estech is asserting claims 1 and 2 of the '699 Patent.").

[4] Liberty Mutual Joint Pretrial Order, Dkt. No. 331 at 3 ("Estech asserts claims 29–34, 36, and 37 of the '684 Patent and claims 1 and 2 of the '699 Patent.").

1

Patents").[5] The Asserted Patents relate to "information processing systems, and in particular, to the use of Voice over IP technology to transmit voice conversations." '699 Patent at 1:10–12; '648 Patent at 1:6–8. The '684 Patent is titled "Quality of Service in a Voice Over IP Telephone System," and the '699 Patent is titled "Voice Mail in a Voice Over IP Telephone System." '699 Patent at cover page; '648 Patent at cover page. Estech has now filed motions to strike certain opinions and testimony from Defendants' experts as allegedly failing to comply with the Federal Rules Evidence and Federal Rules of Civil Procedure.

## II.    LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct ...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d

---

[5] Estech's initial complaint also asserted U.S. Patent Nos. 8,391,298 (the "'298 Patent") and 6,067,349 (the "'349 Patent"), and this set of consolidated cases has been stayed as to the '298 Patent and the '349 Patent as the PTAB had issued final written decisions invalidating all of the claims asserted in these cases. *See* Order Partially Granting Stay, Dkt. No. 124 at 1–2.

269, 276 (5th Cir. 1998)). Ultimately, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

"An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed," even the facts or data themselves are not admissible. FED. R. EVID. 703. Experts may base their opinions on and share otherwise inadmissible facts or data with the jury as long as "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." FED. R. EVID. 703.

Even if testimony is reliable, it may still be excluded if it relies on information that violates the rules. Rule 26(a) requires that a "party must, without awaiting a discovery request, provide to the other parties…a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its *possession, custody, or control* and may use to support its claims or defenses." FED. R. CIV. P. 26 (emphasis added). "If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Since a district court has "broad discretion" in imposing a sanction pursuant to Rule 37, a district court's decision "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013); *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 294-95, 296-97 (5th Cir. 2016) (holding that Rules 26 and 37

operate jointly to create a "federal discovery scheme" that assigns "broad discretion" to district courts with respect to "their control of timing and sanctions for noncompliance").

"District courts consider four factors when determining whether to exclude expert evidence as a sanction for the violation of a scheduling order." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020) (citation omitted). The factors include: "(1) the explanation for the failure to identify the [information]; (2) the importance of the [information]; (3) potential prejudice in allowing the [information]; and (4) the availability of a continuance to cure such prejudice." *Majestic Oil, Inc.*, No. 21-20542, 2023 WL 2549892, at *3 (5th Cir. Mar. 17, 2023) (brackets in original) (quoting *Certain Underwriters*, 951 F.3d at 270). A party's failure to provide *any* justification for its untimely disclosure weighs heavily in favor of striking the disclosure, and may even be sufficient standing alone to support exclusion. *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433 (5th Cir. 2012) (affirming district court's exclusion of an expert's new affidavit purporting to supplement the original report with new methodology because the proffering party gave no justification for untimeliness); *Patterson v. Houston Indep. Sch. Dist.*, 570 F. App'x 367, 370 (5th Cir. 2014) (collecting cases affirming district court exclusions where the party offered no justification for untimeliness).

## III. ESTECH'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF JAMES BRESS (DKT. NO. 217)

### A. Background Facts

Defendants hired James Bress as an expert witness to provide opinions and testimony as to issues of non-infringement. Bress Non-infringement Report, Dkt. No. 217-4 at 2. In his expert report, Mr. Bress relies on information provided by non-party Avaya's engineer, Chris Baldwin, to rebut certain infringement opinions from Estech's infringement expert, Mr. Occhiogrosso. *Id.* at ¶¶ 108–112, 118, and 120. A pretrial conference held on April 10, 2023 shed light on some of

the factual disputes raised in the briefing. While there are many overlapping facts, one firm handled fact discovery for Liberty Mutual in a different manner than another firm handled fact discovery for Conduent. *See* Pretrial Conf. 4/10/23 Tr., Dkt. No. 354 at 66:25–68:15 (Discussing Liberty Mutual); *id.* at 69:1–70:10 (Discussing Conduent).

As far as timeline, on October 4, 2022, Estech served subpoenas on Avaya for testimony and documents. Estech's Motion to Strike, Dkt. No. 217 at 7 (citing Subpoena, Dkt. No. 217-2 at 2). Avaya responded to these subpoenas by producing documents in five separate batches—the first occurring November 22, 2022, and the last occurring January 23, 2023. *Id.* (citing Wittenzellner decl., Dkt. No. 217-1 at ¶ 3). On December 16, 2022—five days before the December 21 fact discovery deadline—Defendants identified Mr. Baldwin as an Avaya witness to testify as to the technical documents produced. Pretrial Conf. 4/10/23 Tr., Dkt. No. 354 at 20:18–24. Estech deposed Mr. Baldwin on December 20, 2022 as Avaya's corporate representative. Baldwin Dep. 12/20/22 Tr., Dkt. No. 272-2 at 5. On December 21, 2022, after Mr. Baldwin's deposition, Estech again sought technical information from Defendants. *See* Estech's Motion to Compel Conduent, Dkt. No. 158 at 6–7; *see also* Estech's Motion to Compel Liberty Mutual, Dkt. No. 154 at 5–6. Estech was unsuccessful. *See* Conduent's Motion to Compel Response, Dkt. No. 166 at 2–3; Liberty Mutual's Motion to Compel Response, Dkt. No. 177 at 3.

On January 5, 2023, Estech served Mr. Occhiogrosso's infringement report. Estech's Motion to Strike, Dkt. No. 217 at 7. After receiving Estech's infringement report, Mr. Baldwin generated a "trace log" and had conversations with Mr. Bress. *Id*. at 5; Defendants' Response, Dkt. No. 248 at 3. On January 23, Defendants produced the "trace log" along with serving Mr. Bress's Non-infringement Report that cites to and relies, in significant part, on the "trace log" and

conversations with Mr. Baldwin. Estech's Motion to Strike, Dkt. No. 217 at 8; Bress Non-infringement Report, Dkt. No. 217-4 at ¶¶ 108–112, 118, and 120.

Separately, Mr. Bress devotes several paragraphs to explaining the "throttling" term and corresponding claim limitations. Bress Non-infringement Report, Dkt. No. 217-4 at ¶¶ 65–73. For example, Mr. Bress asserts that "Mr. Occhiogrosso appears to conflate 'throttling' with 'prioritization,' and then states, "the term 'throttling' means that there must be an active limitation or restriction placed on certain types of data." *Id.* at ¶ 68.

Estech now seek to strike certain portions of Mr. Bress's Non-infringement Report and to prevent Mr. Bress from offering opinions that rely on technical information allegedly withheld during fact discovery, and that allegedly involve improper claim construction. Estech's Motion to Strike, Dkt. No. 217 at 4.

### B.  Analysis

The issues before the Court are (1) whether Mr. Bress relies on technical information Defendants failed to disclosure during fact discovery, and (2) whether Mr. Bress improperly engages in claim construction as to the "throttling" term.

### 1.  Technical Information

First, Estech moves to strike and preclude testimony as to paragraphs 108–112, 118, and 120 of Mr. Bress's Non-infringement Report because the opinions expressed in those paragraphs rely on undisclosed, undocumented conversations with Mr. Baldwin, and Defendants failed to provide the underlying facts and information during fact discovery. Estech's Motion to Strike, Dkt. No. 217 at 13. Defendants respond that Mr. Baldwin generated the "trace log" at Mr. Bress's request. Defendants' Response, Dkt. No. 248 at 12. According to Defendants, this was a timely

and permissible expert experiment that Estech "had every opportunity to run … on its own but *chose* never to do." *Id.* at p. 3 (emphasis in original).

Throughout discovery, Estech sought technical documents and information regarding the accused products. *See* Estech's Subpoena, Dkt. No. 217-2 at 2; *see also* Estech's Motion to Compel Conduent, Dkt. No. 158 at 6–7. Since different firms were responsible for handling fact discovery for Liberty Mutual and Conduent, and there are important distinctions between the responses Estech received, Liberty Mutual and Conduent are analyzed separately.

a. Liberty Mutual

Based on additional facts elicited from the hearing, the Court finds that Liberty Mutual satisfied its discovery obligations under Rule 26(a), and the Rule 37 analysis need not be reached. Counsel for Liberty Mutual testified as to making efforts through Avaya to fully comply with its discovery obligations, and producing all of the information it had properly obtained from Avaya. Pretrial Conf. 4/10/23 Tr., Dkt. No. 354 at 66:25–67:15; 67:19–68:15. While Estech did not obtain all of the technical documentation it sought, Estech failed to rebut Liberty Mutual's showing that it did produce all of the technical documents in its "possession, custody, or control," which included seeking relevant technical documents from the supplier with which it contracted. FED. R. CIV. P. 26. Accordingly, the motion is **DENIED** with respect to Liberty Mutual.

b. Conduent

Unlike Liberty Mutual, the Court finds that Conduent failed to satisfy its discovery obligations under Rule 26(a). During and even after fact discovery, Conduent maintained that it had produced all of the documents in its possession, custody, or control. *See* Conduent's Motion to Compel Response, Dkt. No. 166 at 2–3. At the pretrial conference, the Court sought clarification from Conduent about whether it had requested technical documents from its supplier, Avaya.

Pretrial Conf. 4/10/23 Tr., Dkt. No. 354 at 69:1–13. Because its approach was less thorough than Liberty Mutual's, Conduent sought to factually distinguish its relationship with Avaya compared to that of Liberty Mutual. *See id.* at 69:14–20. After being pressed again about whether Conduent requested technical information from Avaya, Conduent represented that it did not know, but may be able to definitively answer if given time. *Id.* at 69:21–70:14. Even after searching during the lunch and afternoon recesses, at the end of the hearing, Conduent still had not found anything. *Id.* at 150:14–25. More recently, Conduent expressly stated that it never reached out to Avaya. Defendants' Notice, Dkt. No. 368 at 2. Nevertheless, Conduent confirmed that Mr. Baldwin assisted with fact discovery from Avaya to support what Conduent required in its rebuttal report. *Id.* at 69:25–70:4. The fact that Conduent's expert witness easily obtained detailed cooperation from Avaya renders Conduent's claimed inability simply not credible. The Court finds that Conduent failed to satisfy its obligations to produce documents in its possession, custody, or control as required by Rule 26. FED. R. CIV. P. 26.

Turning to whether Mr. Bress's opinions relying on the "trace log" and conversations with Mr. Baldwin should be excluded under Rule 37, the Court holds that they should. The first factor— the explanation for the failure to identify the information—weighs heavily in favor of exclusion. Conduent's explanation includes (1) this was a proper expert experiment, (2) the "trace log" did not exist before January 19, and (3) Estech could have, should have, and failed to request or perform the trace. Notably absent from Conduent's explanation is a discussion of the technical information obtained from Avaya to run the trace. The Court finds that Conduent's representation that it *could not* get the technical information from Avaya is belied by the fact that its non-infringement expert, Mr. Bress, *could* and *did* obtain the technical information. Since Conduent

never requested the technical information from Avaya, Conduent cannot now use that technical information.

The second factor—importance of the information—weighs in favor of inclusion. There is no doubt that technical information that can rebut infringement is important to the case.

The third factor—the potential prejudice in allowing the information—weighs in favor of exclusion. Estech is now unable to question Mr. Baldwin about the technical information, the trace log, or his conversations with Mr. Bress as those disclosures occurred after the 30(b)(6) deposition. Pretrial Conf. 4/10/23 Tr., Dkt. No. 354 at 71:2–11. This is prejudicial to Estech's infringement theory.

The fourth factor—availability of a continuance to cure such prejudice—also favors exclusion. Estech correctly points out that remedying this issue would likely involve (1) deposing Mr. Baldwin again, (2) needing adequate time to analyze the Avaya technical information previously withheld, (3) preparing a new infringement report to address the technical information, (4) preparing a new rebuttal Non-infringement Report, (5) depositions of expert witnesses regarding their new reports, and (6) additional motion practice. Estech's Motion to Strike, Dkt. No. 217 at 11. With jury selection scheduled for May 15, 2023, there is simply no time for a continuance to cure the deficiencies without continuing the trial date as well.

In sum, the factors weigh in favor of excluding Mr. Bress's opinions and testimony (1) relying on the late-produced technical documents and (2) relying on conversations with Mr. Baldwin about the late-produced technical documents. Accordingly, the motion is **GRANTED-IN-PART** with respect to Conduent, and Conduent is precluded from offering testimony, through Mr. Bress, about the late-produced technical documents, which includes the relevant portions of at least ¶¶ 108–112, 118, and 120 of his Non-Infringement Report.

    *2. The "Throttling" Term*

Second, Estech moves to strike and preclude testimony as to paragraphs 65–73 of Mr. Bress's non-infringement report because Estech asserts that Mr. Bress improperly engages in claim construction as to the "throttling" claim term. Estech's Motion to Strike, Dkt. No. 217 at 13–14. In particular, Estech asserts that Mr. Bress *construed* the claims to require that "throttling" occur "between the workstation and the telephone" based on his understanding of the prosecution history, the *Markman* hearing transcript, and the claim construction order. *Id.* at 14 (citing Bress Dep. 2/3/23 Tr., Dkt. No. 217-5 at 33:9-12). Estech also takes issue with Mr. Bress stating that "throttling" must be "active." *Id.* (citing Bress Non-infringement Report, Dkt. No. 217-4 at ¶ 68).

The relevant limitation of Claim 29 of the '684 Patent recites, "sufficiently throttling the data sent from the workstation to the telephone to increase a rate of transfer of the audio information during the communicating step." Mr. Bress's annotated FIG. 1 has been reproduced for reference. Bress Non-infringement Report, Dkt. No. 217-4 at ¶ 40.



The claim construction order states that "the plain language of the claim requires 'throttling' the 'data sent from the workstation to the telephone,' which requires more than merely an increase in the rate of audio information." Claim Construction Order, Dkt. No. 197 at 117.  In

the Order On Motions *In Limine* (Dkt. No. 349), the Court further construed the term "throttling the data" as "reducing the amount or rate of data transmitted," which is consistent with Mr. Bress's opinion that throttling is an "active" step.  Mr. Occhiogrosso, Estech's infringement expert, asserts that Liberty Mutual's accused products "throttle the data," as evidenced by Avaya's documentation, because the products use "traffic shaping" that results in "delays [of] certain types of data to prioritize other types of data." *See* Bress Non-infringement Report, Dkt. No. 217-4 at ¶ 67 (quoting Occhiogrosso Infringement Report). Mr. Occhiogrosso explains that this involves "prioritizing audio information … over data traffic *in the network*." *Id.* at ¶ 73 (quoting Occhiogrosso Infringement Report).

In criticizing Mr. Occhiogrosso's report, Mr. Bress asserts that "Mr. Occhiogrosso appears to conflate 'throttling' with 'prioritization.'" Bress Non-infringement Report, Dkt. No. 217-4 at ¶ 68.  Mr. Bress criticizes Mr. Occhiogrosso's infringement opinions for describing *prioritization* of audio information over data traffic *in the network*, without explicitly stating that audio information is *restricted between* the workstation and telephone. *Id* at ¶ 70 ("there is no "throttling" (or prioritization) of the workstation data ***done between*** the workstation and the telephone.") (emphasis supplied).  Mr. Bress's opinion that the throttling must be "done between" the workstation and the telephone is based on an incorrect construction of the claims.  The claims require that the data sent from the workstation to the telephone be throttled, but do not require that the throttling occur at that point in the circuit.  To this extent, the motion to strike is granted and Mr. Bress is ordered not to testify that the claims require that the throttling be done between the workstation and the telephone.

The other disputes between the experts actually involve questions of fact in the context of the claims—*i.e.*, (1) does delaying data traffic in the network as a result of prioritizing audio

information satisfy the Court's construction of  "throttling the data;" and (2) do the accused products prioritizing audio information over data traffic ***in the network*** *affect* the data sent from the workstation to the telephone as required? Since Mr. Bress answers "no" to these questions, he opines that Liberty Mutual's accused products do not infringe. In contrast, because Mr. Occhiogrosso answers "yes" to these questions, he takes the view that the accused products infringe.

### C.  Conclusion

For the reasons above, Estech's Motion to Exclude Portions of the Expert Report and Testimony of James Bress (Dkt. No. 217) is hereby **GRANTED-IN-PART**.  Accordingly, Conduent is precluded from having Mr. Bress offer opinions relying on (1) the late-produced technical documents,  or (2) any conversations with Mr. Baldwin about the late-produced technical documents, which includes the relevant portions of at least ¶¶ 108–112, 118, and 120 of his Non-Infringement Report.   All Defendants are precluded from offering testimony from Mr. Bress that the claims require that the throttling be done between the workstation and the telephone. Estech's Motion to Exclude is otherwise **DENIED**.

### IV.    ESTECH'S MOTION TO EXCLUDE ALL OR PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF LAUREN R. KINDLER (DKT. NO. 219)

### A.  Background Facts

Defendants hired Lauren R. Kindler as an expert witness for patent damages on behalf of Liberty Mutual and separately on behalf of Conduent. Kindler Liberty Mutual Damags Report, Dkt. No. 219-2 at 1, 4; Kindler Conduent Damages Report, Dkt. No. 219-5 at 1, 2. Estech moves to strike certain of Ms. Kindler's opinions and testimony for relying on technical information and

other information affecting the hypothetical negotiation date that Defendants allegedly withheld during fact discovery.

###### 1. Liberty Mutual

In her Liberty Mutual report, Ms. Kindler relies on information provided by Liberty Mutual's 30(b)(6) witness, Timothy Maguire, to rebut certain damages opinions from Estech's damages expert, Justin R. Blok. Kindler Liberty Mutual Damages Report, Dkt. No. 219-2 at ¶¶ 32, 76, 77.

On June 23, 2022, Estech served its first set of interrogatories in which Interrogatory No. 4 requested that Liberty Mutual describe its VoIP telephone devices during the relevant time period, including the number of each device, and the VoIP functionality (such as voicemail) used with each device. Estech's Motion to Compel Liberty Mutual, Dkt. No. 154 at 2; Estech's Motion to Strike, Dkt. No. 219 at 8. Before the December 21, 2022 fact discovery deadline, Liberty Mutual responded by producing a spreadsheet containing 48,025 VoIP extensions and certain physical Avaya telephone models. Estech's Motion to Strike, Dkt. No. 219 at 8 (citing Liberty Mutual's Third Supplemental Answers, Dkt. No. 219-3 at 3–6). Estech's damages expert, Mr. Blok, used that information in preparing his damages report. *See* Kindler Liberty Mutual Damages Report, Dkt. No. 219-2 at ¶¶ 32 (criticizing Mr. Blok's claim that Liberty Mutual had at least 48,904 infringing VoIP lines as of December 2022).

On January 17, 2023, Estech deposed Mr. Maguire, and in response to being asked if there is a way to determine which VoIP phone is associated with each extension, Mr. Maguire stated, "I don't believe we have that" and "its very difficult to create an inventory of – of phones and – and agents." Estech's Motion to Strike, Dkt. No. 219 at 8; Mr. Maguire Dep. 1/17/23 Tr., Dkt. No. 219-4 at 68:18–69:2. On January 23, 2023, Liberty Mutual served supplemental interrogatory

responses and Ms. Kindler's expert report that relies on conversations with Mr. Maguire specifically identifying a significantly lower number of potentially infringing VoIP lines. Estech's Motion to Strike, Dkt. No. 219 at 8–9.

### 2. *Conduent*

In her Conduent report, Ms. Kindler relies on Conduent's third supplemental responses to Estech's first set of interrogatories to determine the hypothetical negotiation date for a license to the Asserted Patents would have taken place between Affiliated Computer Services—Conduent's predecessor—and Estech in or around 2008. Kindler Conduent Damages Report, Dkt. No. 219-5 at ¶¶ 87–89.

During fact discovery, Conduent produced agreements from 2005 and 2006 between Conduent's predecessor and its VoIP service providers. Estech's Motion to Strike, Dkt. No. 219 at 11 (citing Nortel and ACS 11/16/05 Agreement, Dkt. No. 219-7 at 2; Avaya and ACS 11/1/06 Agreement, Dkt. No. 219-8 at 2). On January 23, 2023, when Conduent served its rebuttal damages expert reports, Conduent also served the third supplemental responses to Estech's first set of interrogatories. *Id.* at 10–11.

Estech first seek to strike certain portions of Ms. Kindler's Liberty Mutual Damages Report and to prevent her from testifying as to those opinions that include allegedly late-disclosed facts obtained through conversations with Mr. Maguire. Estech's Motion to Strike, Dkt. No. 219 at 5. Second, Estech seeks to strike portions or, alternatively, Ms. Kindler's entire expert report on behalf of Conduent as allegedly relying on late-disclosed facts and also for including an incorrect hypothetical negotiation date in her reasonable royalty analysis.

### B.  Analysis

The issues before the Court are (1) whether certain of Ms. Kindler's opinions on behalf of Liberty Mutual should be excluded for relying on untimely disclosed information, and (2) whether certain of Ms. Kindler's opinions on behalf of Conduent should be excluded for (a) relying on information not timely disclosed and (b) using an incorrect hypothetical negotiation date in her reasonable royalty analysis.

For the reasons below, the Court holds that (1) certain of Ms. Kindler's opinions on behalf Liberty Mutual should be excluded, and (2) Ms. Kindler's should be allowed to testify on behalf of Conduent as to the information and the 2008 hypothetical negotiation date.

#### 1.  Ms. Kindler's Liberty Mutual Damages Report

The Court finds that Liberty Mutual failed to properly disclose all of its information underlying Ms. Kindler's opinions during fact discovery, as required by Rule 26. It is undisputed that Liberty Mutual disclosed the spreadsheet containing the raw data with about 48,000 phone lines during the fact discovery period. *See* Pretrial Conf. 4/10/23 Tr., Dkt. No. 354 at 59:18–60:2 It is also undisputed that Mr. Maguire did not further process the raw data until *after* Estech deposed him. *Id.* at 57:9–16; 60:5–14. Liberty Mutual then confirmed that Ms. Kindler's opinions rely on both the timely produced raw data and the late-produced information Mr. Maguire developed after fact discovery and after his deposition. *Id.* at 62:1–20; 63:15–64:2. Therefore, Ms. Kindler relies on facts that were not timely produced.

Turning to the Rule 37 framework, the Court finds that Ms. Kindler's opinions and testimony relying on the untimely information should be excluded. First, Liberty Mutual's explanation for the failure to identify the information during the fact discovery window weighs in favor of exclusion. At the pretrial conference, Liberty Mutual explained that it failed to timely

produce the specific number of VoIP lines identified in the damages report because (1) the effort and time required to distill the raw data, and (2) Estech's deposition questions helped Mr. Maguire determine exactly *how* to distill the information to yield the numbers Estech sought. Pretrial Conf. 4/10/23 Tr., Dkt. No. 354 at 59:24–60:14, 62:6–13. Furthermore, for Ms. Kindler's opinions that rely on input from Mr. Maguire, Liberty Mutual effectively conceded there is no way to separate the timely from the untimely information. *Id.* at 62:1–20; 63:15–64:2. While Liberty Mutual offers reasons for the delay, they are predicated on a production of raw data near the end of fact discovery that Estech had sought six months earlier. Therefore, this factor weighs in favor of exclusion.

Second, the importance of information establishing the actual number of potentially infringing devices weighs in favor of inclusion. Ms. Kindler appears to solely rely on Mr. Maguire as the source of Liberty Mutual's actual number devices that potentially infringe the Asserted Patents. *See* Kindler Liberty Mutual Damages Report, Dkt. No. 219-2 at ¶¶ 76, 77.

Third, the late-produced data—that Estech neither had an opportunity to explore during fact discovery or through cross-examining Mr. Maguire—is clearly prejudicial to Estech and its damages theory because it undermines the timely-produced numbers that Mr. Blok relied on.

Finally, there is little time for a continuance to without delaying the trial, which weighs in favor of exclusion.

In sum, the factors weigh in favor of exclusion. While the actual numbers of potentially infringing devices is undoubtedly important to Liberty Mutual's defense, that same importance should have encouraged its timely gathering, distillation, and production to Estech. And the inability to parse the timely from the untimely information leaves no choice but to exclude opinions relying on conversations with Mr. Maguire. Accordingly, the Court **GRANTS-IN-PART** the motion as to Ms. Kindler's opinions and testimony relying on the untimely technical information,

which includes conversations with Mr. Maguire and the relevant portions of at least ¶¶ 32, 76, and 77 of Ms. Kindler's Liberty Mutual Damages Report.

### 2. Ms. Kindler's Conduent Damages Report

Estech moves to strike Ms. Kindler's opinions and testimony on behalf of Conduent as to the hypothetical negotiation date of 2008 because (a) she allegedly relies on information not timely disclosed and (b) allegedly used the incorrect hypothetical negotiation date.

#### a. Reliance on Conduent's Third Supplemental Answer to Interrogatories

First, Estech seeks to strike Ms. Kindler's damages report for relying on Conduent's third supplemental answer to Estech's interrogatories as the basis for her 2008 hypothetical negotiation date. Estech's Motion to Strike, Dkt. No. 219 at 10–11 (citing Kindler Conduent Damages Report, Dkt. No. 219-5 at ¶¶ 88–89. Conduent's January 23, 2023 third supplemental answer was well after the December 21, 2022 fact discovery deadline.

Conduent explains that it did not timely disclose the date that it first began using VoIP phones in its network because (1) Conduent does not track this information in the ordinary course of its business and (2) Conduent asserts it did not understand Estech wanted this information until the parties met-and-conferred on January 18, 2023 regarding Estech's motion to compel. Conduent's Response, Dkt. No. 249 at 13. This insufficient explanation for the late disclosure weighs in favor of exclusion.

Estech and Conduent both recognize the importance of the date of first infringement for establishing the correct hypothetical negotiation date. Estech's Motion to Strike, Dkt. No. 219 at 13; Conduent's Response, Dkt. No. 249 at 13. Ms. Kindler solely identifies the 2008 date as the hypothetical negotiation date. Kindler Conduent Damages Report, Dkt. No. 219-5 at ¶ 88. This factor weighs in favor of inclusion.

Estech asserts it is prejudiced because the undisclosed information goes to the heart of its damages calculations, it relied on the timely produced Nortel-ACS and Avaya-ACS agreements. Estech's Motion to Strike, Dkt. No. 219 at 11. Mr. Blok already prepared and served a supplemental damages report using the 2008 date for the hypothetical negotiation, and his analysis indicates the royalty rate would have increased with the later 2008 date. Conduent's Response, Dkt. No. 249 at 14 (citing Blok Supplemental Report, Dkt. No. 249-4 at ¶¶ 4–6). The prejudice to Estech is minimized by Estech having already prepared for this scenario. Furthermore, Estech's damages expert, Mr. Blok, applies an inflation adjustment factor to the royalty rate—increasing the royalty rate from $210.05 per VoIP line to $224.19 per VoIP line—which essentially eliminates any prejudice. *See* Mr. Blok Supplemental Damages Report, Dkt. No. 249-4 at ¶ 6. Therefore, this factor weighs in favor of inclusion.

A continuance is unnecessary as the prejudice to Estech is minimal, and Estech already has a supplemental report that includes the 2008 date.

Together, the factors weigh in favor of allowing Ms. Kindler to rely on the late-disclosed information establishing the first date of infringement as 2008. Thus, the motion is **DENIED** as to striking Ms. Kindler's opinions on the 2008 hypothetical negotiation date for relying on late-disclosed information.

### b. Conduent's 2008 Hypothetical Negotiation Date

Second, Estech seeks to strike Ms. Kindler's 2008 hypothetical negotiation date as allegedly being erroneous. The general rule is that that hypothetical negotiation date is the date the infringement began. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012).

Estech's primary argument is that the timely disclosed VoIP service agreements Estech's predecessor, ACS, executed with Avaya and Nortel establish a 2006 <u>actual</u> date of infringement, and therefore, a 2006 hypothetical negotiation date. Estech's Motion to Strike, Dkt. No. 219 at 12–13. Estech fails to identify any portion(s) of the agreements that could establish a date of first infringement of the Asserted Patents in this case. While Ms. Kindler relies solely on Conduent's late supplemental answer, Estech has not shown any inconsistency between the documentary evidence of record and Conduent's representation that it first installed VoIP systems within its network at least as early as 2008. Perhaps Estech could have done so by deposing Ms. Kindler, which it chose not to do.

Accordingly, Estech has failed to demonstrate that the 2008 hypothetical negotiation date—appearing in Conduent's third supplemental answer—that Ms. Kindler relies on is erroneous. Thus, the motion is also **DENIED** as to striking Ms. Kindler's opinions on the 2008 hypothetical negotiation date for being incorrect.

### C.  Conclusion

For the reasons above, Estech's Motion to Exclude All or Portions of the Expert Report and Testimony of Lauren R. Kindler (**Dkt. No. 219**) is hereby **GRANTED-IN-PART** as to opinions relying on conversations with Mr. Maguire, which includes conversations with Mr. Maguire and the relevant portions of at least ¶¶ 32, 76, and 77 of Ms. Kindler's Liberty Mutual Damages Report. The motion is otherwise **DENIED**.

## V.     ESTECH'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF DR. WALT MAGNUSSEN, JR. (DKT. NO. 220)

### A.  Background Facts

Conduent, Liberty Mutual, and Public Storage (hereinafter, "Defendants")[6] hired Dr. Walt Magnussen as an expert witness to offer opinions and testimony as to whether the Asserted Patents are invalid. Magnussen Report, Dkt. No. 220-3 at 2. In his report, Dr. Magnussen introduces and explains multiple prior art references he applies in his analysis. *Id.* at ¶¶ 43–68. While Dr. Magnussen analyzes the validity of the Asserted Patents and asserted claims, he never explicitly identifies the specific subsection under pre-AIA 35 U.S.C. § 102 in which the applied references qualify as prior art (*i.e.*, which subsection of 102(a)–(g)(2) a specific reference qualifies as prior art).

In addition, Dr. Magnussen relies on certain references dated after the February 1, 2001 earliest possible effective filing date of the '684 Patent and the '699 Patent.[7] Magnussen Report, Dkt. No. 220-3 at ¶ 302 (citing ESI-Link Installation Manual, Dkt. No. 220-7, copyrighted in 2002; and citing ESI IP-E-Class Brochure, Dkt. No. 220-8 at 7, copyrighted in 2003), ¶ 305 (citing ESI IP Series Product overview, Dkt. No. 220-6 at 3, dated March 2001).

Estech moves to exclude Dr. Magnussen's opinions and testimony on two grounds: (1) he fails to identify the subsection of pre-AIA 35 U.S.C. § 102 under which the references cited in his

---

[6] Since the first two motions (Dkt. Nos. 217, 219) only pertain to Conduent and Liberty Mutual, and the current motion (Dkt. No. 220) pertains to Conduent, Liberty Mutual, and Public Storage, the term "Defendants" has been being redefined for purposes of this motion only to refer collectively to Conduent, Liberty Mutual, and Public Storage.

[7] The '684 Patent that Estech is asserting against Liberty Mutual issued from U.S. App. No. 09/775,018 (the "'018 Application"), which was filed on February 1, 2001. '684 Patent, Dkt. No. 1-2 at 2. The '699 Patent Estech is asserting against Liberty Mutual, Conduent, and Public Storage issued from U.S. App. No. 10/210902, which is a continuation-in-part of and claims priority to the '018 Application. '699 Patent, Dkt. No. 1-3 at 2. Accordingly, the earliest possible effective filing date for both the '684 Patent and the '699 Patent is February 1, 2001.

invalidity report qualify as prior art, and (2) his opinion that the '684 Patent is invalid in view of Estech's IVX Series improperly relies on references that do not qualify as prior art.

### B. Analysis

The issues before the Court are (1) whether Dr. Magnussen's opinions should be excluded for failing to identify how the applied references qualify as prior art and (2) whether Dr. Magnussen's opinions relying on references dated after the '684 Patent's priority date should be excluded.

For the reasons below, the Court holds that (1) Dr. Magnussen's opinions should not be excluded for not specifically identifying the subsections of 35 U.S.C. § 102, and (2) his opinions relying on post-dated references should be excluded.

#### 1. *Identifying the Subsection for Each Reference Qualifying as Prior Art*

Estech initially argues that Dr. Magnussen's failure to identify the specific subsections of 35 U.S.C. § 102 violates the local patent rules and discovery rules in a manner that prejudices Estech because it cannot prepare an adequate defense. Estech's Reply, Dkt. No. 250 at 3.

The Court finds that there was no rules violation. The combination of Dr. Magnussen's expert report and Defendants' invalidity contentions are sufficient to notify Estech of the potential bases for which the identified references qualify as prior art. In addition, the priority date of the '699 Patent is contested.[8] *See* Invalidity Contentions, Dkt. No. 289-2 at 14; *see also* Motion for Summary Judgment of Regarding Priority and Invalidity, Dkt. No. 213. Whether or not the asserted claims of the '699 Patent are entitled to the February 1, 2001 priority date may affect the subsection(s) of pre-AIA 35 U.S.C. § 102 in which a given reference qualifies as prior art. In addition, Estech's cited case law does not support its position.

---

[8] The '684 Patent issued from the '018 Application, filed February 1, 2001. The '699 Patent issued from continuation-in-part App. No. 10/210,902, filed on August 2, 2002, which claims the benefit of the February 1, 2001 filing date.

Estech also argues that the lack of specificity in how the references qualify as prior art casts doubt on the reliability of Dr. Magnussen's report. Estech's Reply, Dkt. No. 250 at 4 (citing *Daubert* and Rule 702). However, Dr. Magnussen lists the date of each prior art reference he relies on in his invalidity report. Magnussen Report, Dkt. No. 220-3 at ¶¶ 43–62. His report is not unreliable simply because he does not identify the specific subsection of pre-AIA 35 U.S.C. § 102 in which each reference qualifies as prior art with respect to a given claim—especially when Defendants challenge the priority date of the '699 Patent.

Accordingly, the motion is **DENIED** as to this ground.

### 2. *Reliance on References Dated After February 1, 2001*

Second, Estech argues that, for the '684 Patent, Dr. Magnussen improperly relies on references that are not prior art because they do not predate the '684 Patent's February 1, 2001 priority date. Estech's Motion to Strike, Dkt. No. 220 at 6. Estech provides three examples relating to its "IVX" systems: (1) paragraphs 305, 331 of Dr. Magnussen's report rely on a March 2001 document titled "iP Series The All-In-One Phone System Product Overview;" (2) paragraph 302 of Dr. Magnussen's report relies on a 2002 document titled "Esi-Link: Installation Manual;" and (3) paragraphs 302, 305, 312, 331, 350, 353, 358, and 361 of Dr. Magnussen's Report rely on a 2003 document titled "IP E-Class: All-In-One IP PBX System." *Id.* at 7–9 (citing Magnussen Report, Dkt. No. 220-3 at ¶¶ 294–362). Does Dr. Magnussen improperly rely on post-February 2001 Estech IVX documentation for his opinions that claims 29–41 of the '684 Patent are invalid? The Court finds that he does.

Estech argues that "IVX" is a branding term that refers to a variety of products, systems, and architectures that have evolved significantly over time. Estech's Reply, Dkt. No. 271 at 4.

Accordingly, Estech contends that Dr. Magnussen's reliance on Estech's IVX documentation dated after February 1, 2001 is improper as a matter of law. *Id.* at 5.

Defendants respond that Dr. Magnussen relies on Estech's own IVX product as prior art and cites multiple documents to show how the product functioned. Defendants' Response, Dkt. No. 6. In addition, Defendants contend that Dr. Magnussen may properly rely on references that post-date the relevant critical date so long as it is shown the features identified in the post-dated references were also publicly available before the relevant critical date. Defendants' Sur-reply, Dkt. No. 289 at 6 (citing *United Services Automobile Ass'n v. PNC Bank N.A.*, No. 2:20-cv-00319-JRG-RSP, 2022 WL 1300832, at *5 (E.D. Tex. Apr. 29, 2022)). Defendants identify paragraphs 52, 55, and 61 of Dr. Magnussen's report in which he describes IVX as a single system. Thus, according to Defendants, Estech cannot contest admissibility of Dr. Magnussen's opinions based on the post-dated documents, but it may challenge sufficiency or credibility.

Here, Dr. Magnussen does more than merely reference documents to help explain general functionality—he relies on them to teach or suggest claim limitations. *See* Magnussen Report, Dkt. No. 220-3 at ¶ 295 ("IVX's own guarantee of certain QOS confirms the concept of providing QOS was known. (ESTECH-0011609). One way IVX provided QOS guarantees is through an add-on service provided by Estech by the name of ESI-LINK. (ESTECH-0011609)."); *see also* ¶ 302 ("As the IVX phones included two ports, they included in 'Integrated Layer 2 two-port 10/100 switch [to] provide[] QOS to ensure high speech quality during heavy LAN activity.' (ESTECH-0011919)"); *see also* ¶ 305 ("IVX is a phone that includes two ports in an 'Integrated Layer 2 two-port 10/100 switch [to] provide[] QOS to ensure high speech quality during heavy LAN activity.' (ESTECH-0011919)").

While there are a few specific circumstances for relying on post-dated factual references, those are exceptions to the rule. *Compare In re Wilson,* 311 F.2d 266, 135 USPQ 442 (CCPA 1962) (holding that in some circumstances, references cited to show a universal fact need not be available as prior art before applicant's filing date.) *and In re Wilson*, 311 F.2d 266, 135 USPQ 442 (CCPA 1962) (holding factual evidence from post-dated reference could be used to establish that characteristics of prior art products were known) *with Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1374, 124 USPQ2d 1354, 1359 (Fed. Cir. 2017) (holding post-effective-filing-date evidence offered to illuminate the post-effective-filing-date state of the art is improper). Defendants do not dispute that the February 1, 2001 filing date is the priority date of the '684 Patent.

Since (1) the general rule is not to allow post-dated references as evidence for invalidity, (2) Dr. Magnussen relies on those references for more than merely explaining functionality of the prior art devices, and (3) Defendants have not identified a suitable exception for which these references may be relied upon by their invalidity expert, the probative value of the post-dated references, and Dr. Magnussen's opinions relying them, are substantially outweighed by the danger of confusing issues of invalidity and misleading the jury. FED. R. EVID. 403; FED. R. EVID. 703. Accordingly, the motion is **GRANTED** as to Dr. Magnussen's opinions and testimony relying on Estech's IVX references dated *after* February 1, 2001. Therefore, Dr. Magnussen is prohibited from testifying as to Estech's IVX references dated after February 1, 2001.

### C.  Conclusion

For the reasons above, Defendants' Motion to Exclude Portions of The Expert Report and Testimony of Dr. Walt Magnussen, Jr. (Dkt. No. 220) is hereby **GRANTED-IN-PART** as to Dr. Magnussen's opinions and testimony relying on Estech's IVX references dated after February 1, 2001, including those that rely on the documents identified in Exhibit 5 (iP Series The All-In-One

Phone System Product Overview, Dkt. No. 220-6), Exhibit 6 (Esi-Link: Installation Manual, Dkt. No. 220-7), and Exhibit 7 (IP E-Class: All-In-One IP PBX System, Dkt. No. 220-8). The motion is otherwise **DENIED**.

    **SIGNED this 5th day of May, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE